[L. A. No. 8445. In Bank.—October 14, 1925.]

In the Matter of the Estate of GERTRUDE G. McCURDY, Deceased. ELIZABETH C. AMES et al., Appellants; NANNIE LOUISE HART VAN SAUTER et al., Respondents.

[1] WILLS — INTENTION — EXTRINSIC FACTS. — A will must be given effect in accordance with the intention of the testator, as found from the language of the will aided by such extrinsic facts as may be admissible for that purpose.

1. See 28 R. C. L. 211.

[2] ID.—CONSTRUCTION FAVORING TESTACY.—A will must be given an interpretation which will make it operative, rather than one which will render it inoperative, and an interpretation by which it disposes of the property dealt with is to be preferred to one which creates an intestacy.

[3] ID.—WILL DEVISING AND BEQUEATHING ENTIRE ESTATE TO A NIECE —EFFECT OF.—The effect of a will, by which the testatrix made her niece the sole devisee and legatee of her estate, was that in the event that she, in the order of time, should predecease the niece and the latter should die intestate, all of the property bequeathed by the testatrix to the niece would, under the law of succession, pass to the heirs of said niece. If, however, the niece should elect to make a will, the estate that came to her from the testatrix would pass to persons whom the niece preferred.

[4] ID.—EXECUTION OF CODICIL—TRUST—INTENTION.—Where the testatrix later executed a codicil to such will, by the terms of which she devised and bequeathed all her property to a trustee, who was directed to pay to such niece during the term of her natural life the net income from the trust estate and, if the net income should not be sufficient, to provide for the reasonable needs and comforts of the niece during any period of illness or other want or necessity, such portion of the principal of the trust estate as, in the discretion of the trustee, was necessary, and provided that upon the demise of the niece the trust "shall cease and terminate and the entire *corpus* and unexpended income shall be paid over and distributed by said trustee in the manner and in the proportions as the said" niece "shall by her last will and testament provide, and in default thereof to her heirs-at-law," the testatrix, by such codicil, intended to give the niece a life estate and reserve unto said niece the testamentary control of the remainder if she chose to exercise that right; and the right to exercise testamentary control over the testatrix's estate could only accrue upon condition that the niece should survive the aunt.

[5] ID.—CONSTRUCTION—EVIDENCE.—In this probate proceeding involving the construction to be placed upon such will and codicil, the intention of the testatrix as expressed by the language of such instruments is materially supported by the extrinsic facts and circumstances.

[6] ID. — TRUST FOR BENEFIT OF NIECE OF TESTATRIX — WHEN EFFECTIVE.—The trust plan provided for in such codicil could become effective only upon the death of the testatrix and the income could be paid to the niece only afer an estate came into being which must depend upon the death of the testatrix.

2. See 28 R. C. L. 206.

[7] ID.—TESTATRIX PREDECEASED BY NIECE—LAPSE OF LEGACY OR DE-
VISE.—The estate devised or bequeathed by the testatrix to the
niece, the latter having predeceased the testatrix and there being
no lineal descendants of the niece—which is a necessary condition
to bring the case within the provisions of section 1310 of the Civil
Code—any devise or legacy made to the niece, lapsed.

[8] ID.—POWER OF APPOINTMENT TO NIECE—EFFECT OF NIECE'S DEATH
UPON — RIGHTS OF REMAINDERMAN. — The power of appointment
given to the niece under the terms of such codicil fell with the life
estate which preceded it. That power did not and could not come
into existence until the death of the testatrix and, as the only per-
son who could have exercised the power was dead before that time,
the power itself never came into existence. It is as if no such
power had been created by the will of the testatrix; and, this be-
ing so, the right of an heir of said niece to take as a remainder-
man under such codicil cannot be questioned.

[9] ID.—INCORPORATION OF WILL BY REFERENCE—EVIDENCE.—In such
proceeding, where it is shown that the testatrix was twenty-one
years the senior of her niece, and no specific reference whatsoever
is made by the testatrix to any will that may be made by the niece
and there is no general language which would justify the probate
court in holding that the testatrix intended to incorporate the
niece's will, or any part thereof, into her own will, the rule of
incorporation by reference has no room for play in the case, as
the evidence does not tend to establish that the testatrix had any
such purpose; and where the implied finding of the trial court is
to the contrary, such finding cannot be disturbed on appeal.

[10] ID.—KNOWLEDGE—CONSTRUCTION.—In such proceeding, the con-
tention that it was the purpose of the testatrix that her estate
should be distributed by the trustee in the same manner and pro-
portions as the niece should devise her own estate cannot be sus-
tained where it was the intention of the testatrix that the niece
in disposing of the former's estate should have knowledge of that
fact; knowledge that it was the testatrix's estate and not her own,
merely.

[11] ID. — DISSIPATION OF TRUST SCHEME — EFFECT UPON INTEREST OF
REMAINDERMAN.—The fact that the trust scheme provided for in
such codicil was dissipated upon the death of the niece, who pre-
deceased the testatrix, could not defeat the interest of the re-
mainderman.

[12] ID.—TRUST—DISCRETIONARY POWER OF TRUSTEE—CONSTRUCTION.—
It is unnecessary to determine in this proceeding the validity of
the provisions of the codicil reposing in the trustee a discretion
to pay greater amounts than the income to the niece, for the sub-
ject matter contained in the discretionary provisions is not inex-
tricably interwoven or interrelated with other provisions of the

trust instrument, which are clearly valid, and therefore such dis-
cretionary provisions could not render the whole trust instru-
ment invalid.

---

(1) 40 Cyc., p. 1388, n. 90, p. 1392, n. 11.   (2) 40 Cyc., p. 1407,
n. 97, p. 1409, n. 4.   (3) 40 Cyc., p. 1927, n. 22.   (4) 40 Cyc.,
p. 1836, n. 49.   (5) 40 Cyc., p. 1392, n. 11.   (6) 40 Cyc., p. 1925,
n. 18.   (7) 40 Cyc., p. 1925, n. 18.   (8) 40 Cyc., p. 1925, n. 18.
(9) 24 C. J., p. 537, n. 93.   (10) 40 Cyc., p. 1830, n. 15.   (11) 40
Cyc., p. 1836, n. 48.   (12) 40 Cyc., p. 1805, n. 94.

APPEAL from a judgment of the Superior Court of Santa
Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro for Appellants.

Heaney, Price & Postel for Respondents.

SEAWELL, J.—Gertrude G. McCurdy and Louise E.
Hart were aunt and niece, respectively. Both were spinsters
and for a number of years immediately prior to the death
of the niece, which occurred August 2, 1921, had made
their homes together at the city of Santa Barbara, this state.
At the time of her demise the niece was about fifty-one years
of age. The aunt died March 15, 1922, at the age of about
seventy-two years, having survived the niece by about seven
months. It was stipulated at the hearing in the court below
that at the time of the death of said Louise E. Hart she
was unmarried and left neither issue, nor mother, nor father
surviving, but that she did leave surviving her Nannie Louise
Hart Van Sauter, a sister of her deceased father, and Ger-
trude G. McCurdy, a sister of her deceased mother; further,
that Nannie Louise Hart Van Sauter survived Gertrude G.
McCurdy.

As to Gertrude G. McCurdy it was stipulated that at the
time of her death she left neither issue, nor husband, nor
father, nor mother surviving; that the brothers and sisters
of her father and mother had predeceased her and that all
of the children of said brothers and sisters had also pre-
deceased said Gertrude G. McCurdy. Then follows a long
list of children of the children of deceased brothers and
sisters of the father and mother of said Gertrude G. Mc-

Curdy, within which the appellants are included. Thus it will be observed that the degree of relationship that existed between Gertrude G. McCurdy, deceased, and the contending heirs was somewhat remote.

By her will, executed October 14, 1915, Gertrude G. McCurdy devised and bequeathed all of her property, both real and personal, to her niece, Louise E. Hart, naming therein certain persons to whom she requested her said niece to give something by way of a remembrance if the request should meet the approval of said niece and if it did not meet with her approval she was not required to regard it. No bonds were required of the niece as executrix and she was given full power to sell and dispose of all property belonging to the estate without applying to the court for leave to do so, and if said niece should not wish to act as executrix she was given the power to nominate someone to act in her place and stead with like powers as were conferred upon her.

On August 30, 1920, Gertrude G. McCurdy executed a codicil to her said will last above mentioned by which she republished said will and testament except in so far as the same was changed or modified by said codicil. That portion of said will by which she gave, devised, and bequeathed all of her property, real and personal, to her niece, Louise E. Hart, was by said codicil revoked, and in lieu thereof she gave, devised, and bequeathed all of her said property to the First National Bank of Santa Barbara, to be held by it in trust, nevertheless, upon the following express trust and conditions:

"To hold and manage the same, receiving the net income therefrom, and after the payment of all taxes, assessments, costs, charges and expenses incurred in the care, administration and protection of the trust estate and the protection of this trust and its defense against legal or equitable attack by any person, both during and after probate proceedings of my estate, to pay the net income received and derived from said trust estate to the said Louise E. Hart for and during her natural life. Upon and on the demise of the said Louise E. Hart, this trust shall cease and terminate and the entire *corpus* and unexpended income shall be paid over and distributed by said trustee in the manner and in the proportions as the said Louise E. Hart shall by her

last will and testament provide, and in default thereof to her heirs-at-law.

"Second: If in the absolute and uncontrolled discretion of said Trustee the net income from the trust estate should not be sufficient to provide for the reasonable needs and comforts of said Louise E. Hart, during any period or periods of her illness or other want or necessity, said trustee may, and it is hereby authorized and empowered, but it shall in no event be required so to do, and as often as it shall deem necessary, pay to or use, apply or expend for the use and benefit of said Louise E. Hart such portions of the principal of the trust estate, up to and including the whole thereof, as said trustee, in its absolute discretion, may determine to be adequate to provide for said Louise E. Hart during such period or periods."

The same request made in the will as to the mementos was repeated in the codicil with the further provision, that the First National Bank of Santa Barbara be requested and authorized to make the selection of said mementos with the approval of said Louise E. Hart.

On March 16, 1921, Louise E. Hart made the following holographic will:

"March 16th, 1921.

"After all my just & Lawful debts are paid, I, Louise E. Hart (spinster) of the City of Santa Barbara, California, do hereby Will and Bequeath to my aunt Gertrude G. McCurdy, any and all of my property & Possessions.

"Any other Relatives, or any other claimants, whomsoever to my Will, to be given only the sum of One Dollar ($1.00), if claim is made.

"Except Five Hundred Dollars ($500.00) left to my chinese cook, Gin Kee, for his faithfulness & Care during my long illness.

"Harry Ross, Attorney-at-law, of the City of Santa Barbara, California, to act as my executor, without bond.

I revoke all other wills heretofore made by me, No other Will or Claimant to Will, to be given recognition by law."

The foregoing includes all of the provisions of each of the respective wills which at all bear upon the questions presented upon the appeal. No question of a want of testamentary capacity on the part of either testatrix or undue influence is raised. The construction to be placed upon the

wills and the effectiveness of each considered with reference to the order of the deaths of the respective testatrices are the outstanding points in the case. The appraised value of the aunt's estate was about $60,000 and that of the niece was about $23,000.

The niece having predeceased the aunt, her estate was in the course of administration in the probate court when the aunt died. In due course the niece's estate was distributed to the First National Bank of Santa Barbara, as the executor of the estate of said Gertrude G. McCurdy, deceased. The probate court, in the estate of the aunt, Gertrude G. Mc-Curdy, found that the will of Louise E. Hart was inoperative and ineffectual to dispose of any portion of the trust estate created by the last will and testament of Gertrude G. Mc-Curdy, and further found that the only heir at law of said Louise E. Hart left surviving was Nannie Louise Hart Van Sauter, a sister of the deceased father of said Louise E. Hart. Distribution was thereupon made of the entire estate of the said Gertrude G. McCurdy to Nannie Louise Hart Van Sauter. The heirs at law of the said Gertrude G. McCurdy, deceased, have appealed from said order of distribution. In considering the effect of the will of Gertrude G. McCurdy it is necessary to bear in mind certain well-established rules of construction. [1] A succinct restatement of the rule is found in the *Estate of Phelps,* 182 Cal. 752 [190 Pac. 17]. It is there said: "The will must be given effect in accordance with the intention of the testator, as found . . . from the language of the will aided by such extrinsic facts as may be admissible for that purpose. [2] A will must be given an interpretation which will make it operative, rather than one which will render it inoperative, and an interpretation by which it disposes of the property dealt with is to be preferred to one which creates an intestacy."

[3] We think the language of the will of 1915 and the codicil of 1920 leaves little room for doubt as to what the intention of Gertrude G. McCurdy was as to the final disposition of her estate. By the will it was her clear intention to make her niece the sole devisee and legatee of her estate. In fact, that is what she did in unmistakable language. In the event that she, in the order of time should predecease the niece and the latter should die intestate, all of the property bequeathed by the aunt to the niece would,

under the law of succession, pass to the heirs of said niece. If, however, the niece should elect to make a will the estate that came to her from the aunt would pass to the persons whom the niece preferred. Failing to evidence a contrary desire the aunt's estate would go to the niece's heirs. Such was the effect of the will. [4] The codicil was intended to give the niece a life estate and reserve unto the niece testamentary control of the remainder if she chose to exercise her right. The right to exercise testamentary control over the aunt's estate could only accrue upon condition that the niece should survive the aunt.

[5] The intention of the testatrix is not only clearly expressed by the language of both will and codicil but is materially supported by extrinsic facts and circumstances. The aunt's reasons for establishing a testamentary trust in August, 1920, about one year before the niece's death, are not stated in express terms. It will be noted, however, that the niece in providing a legacy of $500 for a Chinese servant in the household gave as her reason for so doing that said legacy was given as a reward for his faithfulness and care· of her during her long illness. By the testamentary trust created by the codicil the aunt made provision for the niece's needs during any period or periods of illness, as the necessities of the situation, in the judgment of the trustee, might require. It may reasonably be inferred that one of the considerations that moved the aunt to latterly create a trust by codicil was to relieve her niece of the burdens of business cares that would have been cast upon her in the management of an estate of considerable magnitude. It will be noted that she gave her the whole income of her estate and made, or attempted to make, provision for the use of any part of, or the consumption of the entire *corpus* of the estate, if the income should for any reason, in the judgment of the trustee, be insufficient to comfortably maintain said niece. Further, she adopted a clause intending thereby to confer upon her the power of appointment; the power of directing to whom the remainder should pass and, if the power should not be exercised by said niece, the estate was not to revert to the aunt's heirs, but it was to vest in the heirs of the niece, just as it would have done had the aunt predeceased the niece under the will and before the annexation of the codicil.

Counsel have devoted much time to a discussion of the proper construction to be placed upon the following clause of the codicil: "Upon and on the demise of the said Louise E. Hart, this trust shall cease and terminate and the entire *corpus* and unexpended income shall be paid over and distributed by said trustee in the manner and in the proportions as the said Louise E. Hart shall by her last Will and Testament provide, and in default thereof to her heirs-at-law."

[6] The trust plan could become effective only upon the death of the aunt and the income could be paid to the niece only after an estate came into being which must depend upon the death of the testatrix. The language is open to the construction placed upon it by respondent and the execution of the trust would compel such a construction.

[7] The estate devised or bequeathed by the aunt to the niece, the latter having predeceased her testatrix and there being no lineal descendants of the niece—which is a necessary condition to bring the case within the provisions of section 1310 of the Civil Code—any devise or legacy made to the niece, lapsed. [8] The power of appointment given to the niece fell with the life estate which preceded it. That power did not and could not come into existence until the death of said aunt and, as the only person who could have exercised the power was dead before that time, the power itself never came into existence. It is as if no such power had been created by the will of the aunt. (*Curley* v. *Lynch*, 206 Mass. 289 [92 N. E. 429]; *In re Moore's Estate*, 162 N. Y. Supp. 213; Farwell on Powers, sec. 226; Sugden on Powers, 8th ed., 460; *In re Piffard's Estate*, 111 N. Y. 410 [2 L. R. A. 193, 18 N. E. 718]; *Condit* v. *De Hart*, 62 N. J. L. 78 [40 Atl. 776]; *In re Fowles' Will*, 222 N. Y. 222 [Ann. Cas. 1918D, 834, 118 N. E. 611]; 31 Cyc. 1053.) This being so, the right of the respondent to take as a remainderman cannot be questioned. Section 1344 of the Civil Code provides as follows: "The death of a devisee or legatee of a limited interest before the testator's death does not defeat the interests of persons in remainder, who survive the testator."

The language found in the *Estate of Gregory*, 12 Cal. App. 309 [107 Pac. 566], a case not unlike the one before us, is apposite to the situation. It is there said: "The fact that the wife never lived to become the beneficiary of the trust

created in her favor is no reason for holding that the subsequent provision of the will directing the disposition of the fund should be defeated.''

[9] The physical facts of the case are that the aunt was twenty-one years the senior of the niece. If the former anticipated surviving the latter, and as the provisions of the will would indicate, there would have been no reason for the aunt to incorporate any part of the niece's will into her will. No specific reference whatsoever is made by the aunt to any will that may be made by the niece and there is no general language which would have justified the probate court in holding that the aunt intended to incorporate the niece's will, or any part thereof, into her own will. The rule of incorporation by reference has no room for play in this case as the evidence does not tend to establish that the aunt had any such purpose. The implied finding of the court is to the contrary and its finding in this respect cannot be disturbed. The aunt was dealing solely with her own estate and there is nothing in the will of either the aunt or the niece or the circumstances attending the execution of either of said instruments to indicate that the aunt and niece intended to make conjoint or mutual wills or that either was acting with a knowledge as to what disposition the other should make of her estate. Relatively, in point of time, the wills were made far apart with different persons named as executors. One was drawn with all the formalities of testamentary prerequisites and witnessed, while the other is holographic. There are no expressions in either that would suggest concert of action or incorporation by reference. (*Estate of Plumel*, 151 Cal. 77 [121 Am. St. Rep. 100, 90 Pac. 192].)

[10] The contention of appellants that it was the purpose of the aunt that her estate should be distributed by the trustee in the same manner and proportions as the niece should devise her own estate is not sustained by the context of the aunt's will. It is fairly apparent from the language of the codicil that it was the intention of the aunt that the niece in disposing of the aunt's estate should have knowledge of that fact; knowledge that it was the aunt's estate and not her own, merely. It was not, we think, the intention and desire of the aunt that the niece should dispose of a valuable estate without knowledge of the magnitude of her

testamentary act. Doubtless the aunt expected the niece to survive her and such a contingency would have given to the niece all the light necessary to guide her in her testamentary right. At the time the aunt died she was about seventy-two years of age and in all probability infirm with the weight of her years. Her death occurred about eighteen months following the day she executed the codicil. The niece predeceased her by about seven months and during this intervening period of time she could have, provided she had the testamentary capacity and the inclination, made a subsequent will. This she did not do. It may be that after the niece's death she became indifferent as to the devolution of her estate, or that she was satisfied for reasons of her own to have her estate descend to her niece's heirs, a contingency she had provided for. It would seem that each of the testatrices preferred the heirs of the other to her own.

We are not concerned with the question whether or not powers of appointment are valid in this state (21 Cal. Jur. 426 et seq.), since the repeal by the legislature in 1874 of the title in the Civil Code relating to powers inasmuch as the power created in the instant case failed upon the death of the donee, as above pointed out, and there was no one remaining to exercise it. It is as if no such power was created by the codicil.

It is the claim of appellant that the whole trust scheme of the codicil was invalid and must fail. [11] As a matter of fact, the whole trust scheme was dissipated upon the death of the owner of the equitable life estate, to wit, Louise E. Hart, the niece of the testatrix. But such a contingency could not defeat the interest of the remainderman. (Secs. 741, 742, Civ. Code, *supra*.) The trustee had no opportunity to exercise the discretion reposed by the testatrix in it. [12] However this may be, the discretionary power reposed in the trustee is clearly severable from other parts of the trust instrument which are undoubtedly valid. The discretionary powers are contained within a separate paragraph and follow the imperative duties cast upon the trustee to pay to the beneficiary the *entire income* from a $60,000 estate. Ordinarily, one would suppose that the income from such an estate, clear and free from indebtedness, would be sufficient to maintain one person. The testatrix, however, in her anxiety for the welfare

and comfort of her niece and to insure her against the hazards of misfortune, after having made it the imperative duty to pay to the beneficiary a certain, fixed amount, reposed in the trustee a discretion as to what greater amount should be expended for the niece, if in its judgment her comfort should require the expenditure of any sum beyond the amount which would seem to be ordinarily sufficient for her needs. Resting its contention upon the *Estate of Sanford*, 136 Cal. 97 [68 Pac. 494], appellants argue that the whole trust scheme must fall because of the discretion alternatively placed in the power of the trustee. There are authorities in this state and elsewhere which would seem to uphold the trust provisions contained in the testatrix's codicil. This is a question, however, not necessary for decision inasmuch as the subject matter contained in the discretionary provisions is not inextricably interwoven or interrelated with other provisions of the trust instrument which are clearly valid. (*Sacramento Bank* v. *Montgomery*, 146 Cal. 745 [81 Pac. 138]; *Estate of Fair*, 136 Cal. 79 [68 Pac. 306].)

A brief statement of facts was agreed upon by counsel in the case with the right of objection reserved. Appellants offered the stipulation in evidence and respondents made appropriate objections thereto. The stipulation was excluded by the court. There is nothing in the stipulation of facts of a material character that was not before the court. We cannot see that it would have been of any assistance to the court in determining the issues properly before it. The fact that the aunt was ill and in a hospital at the time she executed the codicil, to wit, August 20, 1920, and that her illness grew progressively worse until her death, March 15, 1922, was not material in the absence of a claim of incompetency or testamentary incapacity, which claim was not made upon the trial of the case. No claim was made that she was by fraud or trick deprived of an opportunity to have executed a subsequent will if she had so desired.

The decree appealed from is affirmed.

Richards, J., Waste, J., Houser, J., *pro tem.*, Lennon, J., Shenk, J. and Lawlor, Acting C. J., concurred.

Rehearing denied.