[S. F. No. 18239. In Bank. Jan. 18, 1952.]

Estate of MARIE LEFRANC, Deceased. ADELE MASSON, Appellant, v. NELTY LEFRANC HORNEY et al., Respondents.

James A. Brown for Appellant.

Burnett & Burnett for Respondents.

SCHAUER, J.—Appellant, Adele Masson, is both an heir at law and named as a legatee under the last will of decedent, Marie Lefranc. She appeals from a decree of final distribution which provides that because she had contested the will she had forfeited her substantial rights thereunder and which orders distribution of the entire residue of the estate to respondent, Nelty Lefranc Horney. ·We have concluded that the trial court correctly denied Adele a share of the estate, other than an alternative bequest of $1.00, but that the decree appealed from must be reversed because of failure to comply

with provisions of the testatrix' will and with the law relating thereto.

Marie Lefranc died on April 7, 1942, leaving as her sole heirs at law two nieces, who are the appellant Adele and the respondent Nelty. By her will decedent made certain minor specific bequests and then left "all the rest, residue and remainder of my Estate" to a trustee to be held "subject to the following, uses, terms, conditions and limitations:

"(a) My said trustee shall pay to my niece, ADELE MASSON, during her lifetime, all of the net income of said Trust Estate.

"(b) This Trust shall cease and terminate upon the death of my said niece, ADELE MASSON, whereupon the corpus of said trust, as well as any undistributed income thereon shall become the property of and vest in the issue of my said niece, ADELE MASSON, born in lawful wedlock. If my said niece, ADELE MASSON, shall leave no issue born in lawful wedlock upon her death, then the corpus of said trust and the undistributed income thereon shall become the property of and vest in my niece NELTY LEFRANC HORNEY, if she be alive at said time. If NELTY LEFRANC HORNEY should predecease ADELE MASSON, then upon the death of said ADELE MASSON, without issue born in lawful wedlock, the corpus of said trust and the undistributed income thereon shall vest in the issue of said NELTY LEFRANC HORNEY.

"(c) [The powers of the trustee over the property are here set forth.]

"(d) It is expressly understood that the net income arising from this trust estate, and the principal thereof, are intended for the sole and individual use and enjoyment of the said beneficiary, ADELE MASSON, subject to the terms and conditions hereof, and said beneficiary shall not in any event sell, assign, transfer, convey, pledge, hypothecate or otherwise encumber her interest under this trust nor shall the principal or any of the income arising therefrom be liable for any debt of said beneficiary, nor subject to a judgment or judgments rendered against said beneficiary nor to the process of any Court in aid or execution of any judgment or judgments so rendered."

The next succeeding clause of the will provides: "I purposely make no provision for any other person whether claiming to be an heir of mine or not, and if any person, whether a beneficiary under this Will or not mentioned herein, shall contest this Will or object to any of the provisions hereof, I give to such person so contesting or objecting the sum of

$1.00 and no more in lieu of the provision which I have made, or which I might have made herein for such person so contesting or objecting."

The will was admitted to probate and some six months later, in October, 1942, Adele petitioned to revoke the probate thereof on the ground that decedent was of unsound mind when the will was executed. The will was upheld in the trial court and the judgment was affirmed on appeal. (*Estate of Lefranc* (1950), 95 Cal.App.2d 885 [214 P.2d 420].)

Thereafter the executors filed their first and final account, and petition for final distribution. They asked that, because Adele had by her contest of the will forfeited her rights (other than to the alternative bequest of $1.00) as a beneficiary thereunder, the entire residue of the estate be distributed to Nelty Lefranc Horney. Adele filed objections to the petition, asserting that she was entitled to take under the trust provisions of the will notwithstanding her contest of its probate. Nelty also filed certain objections to the account; but joined in the request of the executors that the residue of the estate be distributed to her. She alleged that Adele, who is childless, is unable by reason of a surgical operation to bear a child; that "the only reason for said trust was the support of Adele"; that even if the "trust remains in effect, all income should be distributed to Nelty."

After a hearing the trial court found, among other things, "That at the time of the commencement of said will contest proceeding by said Adele Masson, to wit, on the 7th day of October 1942, said Adele Masson was unmarried and has never been married, was approximately 48 years of age, and had not then nor has she since given birth to any child or children, nor does she have nor has she ever had any child or children."

"That the only reason for the creation of the trust in said will was for the individual use and enjoyment of said Adele Masson as to net income and principal, subject to the terms and conditions of the will of said decedent; that by virtue of the contest of said will commenced by Adele Masson as aforesaid, together with the results flowing therefrom as aforesaid, including paragraph Sixth [the contest clause] of said will, the reasons for the creation of said trust ceased to exist, and said trust ceased and terminated and never came into effect or being, and that [the trustee] . . . is entitled to have distributed to it nothing under said will, and the entire rest and residue of said estate should be distributed

to Nelty Lefranc Horney, free from any trust or other restriction.'' Final decree of distribution was thereupon entered, under which $1.00 is ordered distributed to Adele and the residue of the estate to Nelty. This appeal by Adele followed.

At the hearing there was read into the record certain testimony of the attorney who drafted the will, given on the trial of the will contest, to the effect that the reason ''as to why there should be a trust'' was that it was ''considered that Adele was not competent to do business, to handle her own affairs as a business woman. . . . They didn't think that . . . Adele could compete with business people in dealings with her property. She needed a manager.'' No other evidence concerning the trust purpose was offered. Nelty's attorney offered to prove that as the result of a surgical operation Adele was incapable of bearing children; this offer of proof was never directly ruled upon, and no evidence on the issue was presented.

Appellant now concedes the law to be settled that by her contest of the will she has, pursuant to the contest clause contained therein, lost her rights to take more than $1.00 under the will. (See *Estate of Hite* (1909), 155 Cal. 436 [101 P. 443, 17 Ann.Cas. 993, 21 L.R.A.N.S. 953]; *Estate of Miller* (1909), 156 Cal. 119 [103 P. 842, 23 L.R.A.N.S. 868]; *In re Kitchen* (1923), 192 Cal. 384, 389 [220 P. 301, 30 A.L.R. 1008]; *Lobb* v. *Brown* (1929), 208 Cal. 476, 484 [281 P. 1010].)

Appellant (presently some 57 years of age) contends, however, that no act of hers could work a forfeiture of the rights of her unborn issue, ''in whom the trust property is to vest upon her death''; and that distribution to Nelty free of the trust would effect such a forfeiture. In this connection she argues that under the law ''both in this and every other American jurisdiction, the possibility of issue is never regarded as extinct until death.'' (See *Fletcher* v. *Los Angeles Trust & Sav. Bank* (1920), 182 Cal. 177 [187 P. 425].) It appears, however, that the question need not be decided here, for the reason that Nelty has two minor children, now living, whose rights to take the property upon the death of Adele without issue and if Nelty predeceases Adele, are also involved, as discussed more fully hereinafter.

Adele's other contention on appeal is that ''the residue of the estate could not be distributed to Nelty . . . for the reason that the will . . . makes no disposition of the residue . . . in the event of a contest. Therefore, as to the life estate of appellant in the trust property, an intestacy results and

Adele Masson, as an heir at law, is entitled to her share of the income from the property of the deceased.''

Under the provisions of various contest clauses heretofore considered by the courts it has been held that whether one in the position of Adele is entitled to succeed as an heir at law to any portion of the legacy (here, the trust income, which has been termed an ''equitable life estate''[1]) which she forfeited depends upon whether the testatrix made other valid disposition thereof. It has been said that ''A testator must do more than merely evince an intention to disinherit before the heirs' right of succession can be cut off. He must make a valid disposition of his property.'' (*In re Walkerly* (1895), 108 Cal. 627, 652 [41 P. 772, 49 Am.St.Rep. 97]; *Campbell-Kawannanakoa* v. *Campbell* (1907), 152 Cal. 201, 207 [92 P. 184]; see, also, *Estate of Heney* (1944), 66 Cal. App.2d 867, 869 [153 P.2d 427]; *Estate of Mathie* (1944), 64 Cal.App.2d 767, 781 [149 P.2d 485].) Thus, in *Estate of Mathie* it is held that inasmuch as the entire estate, after payment of debts and expenses, was left in equal shares to two persons without other bequests, the will contained no residuary clause, and a legatee who had forfeited his legacy by contesting the will was nevertheless entitled to receive a share of such legacy under the laws of intestate succession. ''A 'residuary clause' has been defined to be the clause in a will by which that part of the property is disposed of which remains after satisfying bequests and devises. (69 C.J., p. 413, sec. 1472.)'' (*Childs* v. *Gross* (1940), 41 Cal.App.2d 680, 684 [107 P.2d 424]; see, also, *Estate of Moorehouse* (1944), 64 Cal.App.2d 210, 214-215 [148 P.2d 385]; *Estate of Mathie* (1944), *supra.*)

In the present case inasmuch as the testatrix first made minor specific bequests and then left the ''rest, residue and remainder'' of her estate to the trustee ''subject to the . . . uses, terms, conditions and limitations'' expressed in her will, it is apparent that there is a residuary clause, which is to be construed with the other terms of the will in determining this appeal.

Various rules for the interpretation and construction of wills are found in the Probate Code and in court opinions. A ''will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full

---

[1] See *Estate of McCurdy* (1925), 197 Cal. 276, 286 [240 P. 498]; Civ. Code, §§ 863-866.)

extent, it must have effect as far as possible." (Prob. Code, § 101.) "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." (Prob. Code, § 102.) (See, also, *Estate of Phelps* (1920), 182 Cal. 752 [190 P. 17]; *Estate of McCurdy* (1925), 197 Cal. 276, 282 [240 P. 498].) All "the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail." (Prob. Code, § 103.) "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will." (Prob. Code, § 104.) "A devise of the residue of the testator's real property, or a bequest of the residue of the testator's personal property, passes all the real or personal property, as the case may be, which he was entitled to devise or bequeath at the time of his death, not otherwise effectually devised or bequeathed by his will." (Prob. Code, § 126.) ■ "The making of a will raises a presumption that the testator intended to dispose of all his property. Residuary clauses are generally inserted for the purpose of making that disposition complete, and these clauses are always to receive a broad and liberal interpretation, with a view of preventing intestacy as to any portion of the estate of the testator, and this general rule is in harmony with the declaration of our code that the provisions of a will must be construed, if possible, so as to effect that purpose." (*O'Connor* v. *Murphy* (1905), 147 Cal. 148, 153 [81 P. 406]; see, also, *Estate of Beldon* (1938), 11 Cal.2d 108, 112 [77 P.2d 1052].) ■ The prevailing principle is that the function of the court is to construe a will, not to make one; to ascertain the testator's intention as expressed and, if lawful, give it effect. (*Estate of Moorehouse* (1944), *supra*, 64 Cal.App.2d 210, 216, and cases there cited.)

■■ Applying these principles to the will here involved, it is clear that the intention of the testatrix was to create a trust consisting of the entire residue of her estate, with the income payable to Adele during her life, and the remainder to be distributed upon her death to her issue if any,

otherwise to Nelty if surviving, otherwise to Nelty's issue. It is also explicit that the testatrix intended to give $1.00 and no more to "any person, whether a beneficiary under this Will or not mentioned herein" who "shall contest this Will or object to any of the provisions hereof." Such a trust and such alternative provision for a contestant are valid and lawful.[2] The trust came into existence and the legal title to the property included therein vested in the trustee at the death of the testatrix; a decree of distribution of the estate to the trustee would operate merely to confirm such title in the trustee. (Prob. Code, §§ 28, 300; *Estate of Wellings* (1923), 192 Cal. 506, 510 [221 P. 628]; *Title Ins. & Trust Co. v. Duffill* (1923), 191 Cal. 629, 647 [218 P. 14]; 25 Cal.Jur. 314, and cases there cited; 11B Cal.Jur. 238, § 834.) The future interests of the contingent remaindermen who are to take the property upon Adele's death likewise came into existence at the testatrix' death (Civ. Code, § 749) and cannot be defeated by any act of Adele forfeiting her intermediate or precedent interest. (Civ. Code, §§ 741, 742[3]; see, also, Prob. Code, § 140; *Estate of McCurdy* (1925), *supra,* 197 Cal. 276, 286.) Neither could such future remainder interests be accelerated by any event other than the death of Adele. (Civ. Code, § 780.[4])

It is thus clear that the contingent interests of Nelty's presently living children may not be defeated by Adele's forfeiture of her intermediate interest, and that the decree

---

[2] See Civil Code, section 864: "... the author of a trust may, in its creation, prescribe to whom the real property to which the trust relates shall belong, in the event of the failure or termination of the trust, and may transfer or devise such property, subject to the execution of the trust." See, also, 25 Cal.Jur. 316, section 167, and cases there cited.

[3] Civil Code, section 741: "No future interest can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent interest, nor by any destruction of such precedent interest by forfeiture, surrender, merger, or otherwise, except as provided by the next section, or where a forfeiture is imposed by statue as a penalty for the violation thereof."

Civil Code, section 742: "No future interest, valid in its creation, is defeated by the determination of the precedent interest before the happening of the contingency on which the future interest is limited to take effect; but should such contingency afterwards happen, the future interest takes effect in the same manner and to the same extent as if the precedent interest had continued to the same period."

[4] Civil Code, section 780: "When a remainder on an estate for life or for years is not limited on a contingency defeating or avoiding such precedent estate, it is to be deemed intended to take effect only on the death of the first taker, or the expiration, by lapse of time, of such term of years."

here appealed from under which the entire trust property was ordered distributed to Nelty free of the trust cannot stand. (See *Born* v. *Horstmann* (1889), 80 Cal. 452, 460 [22 P. 169, 338, 5 L.R.A. 577]; *Woestman* v. *Union Trust etc. Bank* (1920), 50 Cal.App. 604, 608-609 [195 P. 944]; *Moxley* v. *Title Ins. & Trust Co.* (1946), 27 Cal.2d 457, 461-462 [165 P.2d 15].) In this connection it may be noted that under the provisions of section 871 of the Civil Code, ''When the purpose for which an express trust was created ceases, the estate of the trustee also ceases,'' and that the trial court found (in part essentially as a conclusion of law) that ''the only reason for the creation of the trust . . . was for the individual use and enjoyment of said Adele Masson as to net income and principal, subject to the terms and conditions of the will . . . ; that by virtue of the [forfeiture of Adele's interest] . . . the reasons for the creation of said trust ceased to exist, and said trust ceased and terminated and never came into effect or being . . .'' Such finding and conclusion, however, are contrary to not only the statutory law of this state cited and quoted hereinabove, but also to the purposes expressly set forth in the will of the testatrix. Although the will clearly expresses the purpose to provide an income for Adele during her life, *provided she did not contest it,* a purpose is also explicitly declared that at the termination of Adele's life the corpus of the trust and ''any undistributed income thereon'' shall become the property of the remaindermen specified, and that control of the trust property remain in the trustee in the meantime. If the testatrix intended that the trust terminate if Adele forfeited her interest by contest, she failed to so indicate in any portion of her will, including dispository clauses, contest clause, and other provisions. That the testatrix did contemplate the contingency of a contest and forfeiture is implicit in the contest clause by which Adele takes the $1.00 awarded her by the decree of distribution. ''A court's inquiry in construing a will is limited to ascertaining what the testator meant by the language which was used.'' (*Estate of Beldon* (1938), *supra,* 11 Cal.2d 108, 112.) By the language here used the trust is to continue until the death of Adele; then, and then only, is it to terminate. The above quoted statutory provisions protect the rights of the contingent remaindermen and the trust cannot terminate or the remaindermen's rights be impaired prior to the event specified. It may also be mentioned that by terminating the trust by reason of Adele's forfeiture of her ''equitable life

estate'' without control of the corpus, the forfeited interest would be increased to a full legal life estate, a result consonant with neither law nor the intention of the testatrix as expressed in her will.

With the trust continued in existence, the question remains as to disposition of the income prior to termination of the trust upon Adele's death. ▮▮▮ It may first be noted that since the 1929 amendment to section 724[5] of the Civil Code accumulation of such income for the benefit of adults as well as of minors is permitted. (See *Hutchins* v. *Security Trust etc. Bank* (1929), 208 Cal. 463, 472 [281 P. 1026, 65 A.L.R. 1059]; *Manning* v. *Bank of California* (1932), 216 Cal. 629, 633 [15 P.2d 746].) And by statutory provision the ownership of such income is declared to be as follows: ''When, in consequence of a valid limitation of a future interest, there is a suspension of the power of alienation or of the ownership during the continuation of which the income is undisposed of, and no valid direction for its accumulation is given, such income belongs to the persons presumptively entitled to the next eventual interest.'' (Civ. Code, § 733.)

▮▮▮ As well stated in 26 California Jurisprudence 963-964, sections 263-264 of Wills, ''Where the will creates a future estate or interest in property, and fails to make disposition of the income or directs a forbidden accumulation thereof, a present disposition of such income is provided for by section 733 of the Civil Code. In the circumstances contemplated by this section, the undisposed of income is declared to belong to 'the persons presumptively entitled to the next eventual interest.' The situation to which the statute applies is presented by the following facts: (1) a valid limitation of a future interest,—that is, an interest which is limited to take effect in possession at a future time; (2) a suspension of the power of alienation or of the ownership of the property,—i.e., a valid trust; (3) an accrual of income during the trust period; (4) an absence of a valid direction for the accumulation of the income. . . . The question as to who, within the meaning of the statute, are the persons 'presumptively en-

---

[5]Civil Code, section 724: ''An accumulation of the income of property may be directed by any will, trust or transfer in writing sufficient to pass the property or create the trust out of which the fund is to arise, for the benefit of one or more persons, objects or purposes, to commence within the time in this title permitted for the vesting of future interests and not to extend beyond the period limiting the time within which the absolute power of alienation of property may be suspended as prescribed by law.''

titled to the next eventual interest,' is to be determined by reference to the provisions of the will.''

Cases interpreting or applying the provisions of section 733 of the Civil Code are as follows:

*Estate of Duffill* (1919), 180 Cal. 748, 760-761 [183 P. 337] : The testatrix in her will directed establishment of a trust in favor of her son, an adult, from which income in a specified fixed sum was to be paid to him, and excess income accumulated, for a fixed number of years, at the termination of which both corpus and accumulations were to be distributed to him free of the trust. Since at that time (prior to 1949 amendment to Civ. Code, § 724) directions for accumulations of income for the benefit of adults were void, it was held that the beneficiary (who was also the sole remainderman) was the ''person entitled to the next eventual interest'' under Civil Code, section 733, and that the decree of distribution correctly awarded the entire trust income to him ''freed of the void condition against accumulation.''

*Manning* v. *Bank of California* (1932), *supra*, 216 Cal. 629, 634-635 : Under the will and a decree of distribution entered January 6, 1925, the testamentary trustee was directed to pay $300 a month to each of the four daughters of decedent during the 20-year term of the trust, or to the issue of any daughter who died during such period leaving issue, otherwise the interest of the deceased daughter to terminate. Upon termination of the trust the ''trust estate'' was to be divided among the four daughters and the issue of any deceased daughter. Thereafter the daughters brought action seeking payment to them of accumulations of income beyond that required to meet the specified monthly payments, on the ground that since directions for such accumulations for the benefit of adults were at that time void, they were entitled thereto. The court declared, in reliance on Civil Code, section 733, that if plaintiffs (the daughters) had appealed from the decree of distribution ''it would be unhesitatingly held that under the will . . . plaintiffs had established their right to the surplus income, whether said income should be regarded as undisposed of, or as income directed to be accumulated by a void direction,'' but that the decree, which directed the accumulations to be made, was final on the subject. This declaration was made after the court expressly mentioned (p. 630) that the daughters' fourteen children had a contingent interest in the trust estate. (See, also, *Estate of Pichoir* (1903), 139 Cal. 682 [73 P. 606].)

*Woestman* v. *Union Trust etc. Bank* (1920), *supra*, 50 Cal. App. 604, 609: Plaintiffs sued to terminate a testamentary trust in their favor created by the will of their deceased mother and confirmed by the decree of distribution. Although refusing termination (by reason of the contingent remainder interests of plaintiffs' children in case either plaintiff died before the trust period expired), the court held that since there "is no provision whatever in the will [or in the decree of distribution] for the accumulation of income" in excess of the fixed monthly payments to plaintiffs, the "excess, therefore, would come within the provisions of section 733 of the Civil Code, and belong to the plaintiffs as the persons presumptively entitled to the next eventual interest." (See, also, *Moor* v. *Vawter* (1927), 84 Cal.App. 678, 681 [258 P. 622]; *cf. Estate of Werner* (1907), 3 Cof. 225, to the effect that inasmuch as testamentary directions for accumulation of trust estate income after the beneficiaries reached the age of 21 were void, such accumulations "will be distributed among the heirs at law.")

*Estate of Arms* (1921), 186 Cal. 554, 557-559, 564-565 [199 P. 1053], relied upon by appellant in the instant case, was decided without reference to Civil Code, section 733, and is therefore not persuasive here. *Estate of Gregory* (1909), 12 Cal.App. 309, 310 [107 P. 566], and *Estate of Lawrence* (1941), 17 Cal.2d 1 [108 P.2d 893] (see, also, *Estate of McCurdy* (1925), *supra*, 197 Cal. 276), relied upon by respondent Nelty in the present case, do not involve disposition of trust income, but rather the disposition of the residue where the first beneficiary thereof named in the will predeceased the testator, and are likewise not here in point.

To summarize: Following the authorities above discussed we hold that the trust here involved must continue in existence until the death of Adele, as required by the will, and that the income therefrom shall in the meantime (during the life of Nelty and so long as no child is born to Adele in lawful wedlock) be paid to Nelty as the person "presumptively entitled to the next eventual interest."

Such holding as to the income avoids intestacy and gives full force and effect to the contest clause of the will under which Adele has forfeited her rights to take as primary beneficiary. As declared in *In re Kitchen* (1923), 192 Cal. 384, 390 [220 P. 301, 30 A.L.R. 1008], "No artificial distinctions are to be taken advantage of or quibbling indulged in to the end that a person plainly and palpably coming within

the scope of the forfeiture clause [of a will] may by 'some hook or crook' escape the penalty of forfeiture.'' To hold that intestacy resulted as to the income from the trust estate upon Adele's forfeiture thereof, that Adele is entitled to take the bequest provided in the contest clause ($1.00), and that she is nevertheless entitled to take one half the trust income as an heir at law, would appear to constitute such an ''artificial distinction'' and ''quibbling'' to the end that she take a share of the estate despite the testatrix' clearly declared intention that the forfeiture clause operate as to ''any person, whether a beneficiary under this Will or not mentioned herein,'' and that any such person should receive only $1.00 ''in lieu of the provision which I have made, or which I might have made herein for such person so contesting or objecting.''

The decree of distribution is reversed, with directions to the probate court to proceed with the administration of the estate in a manner not in conflict with the views expressed in this opinion, and in all proceedings wherein the interests of the infant contingent remaindermen are involved the court shall require that such minors appear by a guardian ad litem and counsel whose interests are not in conflict with those of the wards.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.