[Civ. No. 30045.   Second Dist., Div. Three.   July 14, 1966.]

Estate of BEATRICE BREGMAN DULFON, Deceased. ERNIE I. DULFON, Petitioner and Appellant, v. MARY LOUISE BREGMAN, a Minor, etc., et al., Objectors and Respondents.

Donald J. Hirsch for Petitioner and Appellant.

Sheldon R. Caplow for Objectors and Respondents.

SHINN, P. J.—The appeal is from an order denying the petition of Ernie I. Dulfon for issuance to him of letters testamentary pursuant to his appointment as executor by the will of his deceased wife. The conclusion we reach is that the order should be reversed.

Appellant had been married to Beatrice, the deceased, five and a half years; each had issue of a previous marriage. Beatrice operated what was described as a "bulk" mail order business, owned a considerable amount of property and had the money.

Ernie and Beatrice executed mutual wills. It is sufficient for present purposes to note that the will of Ernie left his estate (except for a 50 percent interest in an invention) to Beatrice

and a 50 percent interest in the invention to his two daughters, issue of his previous marriage. The will of Beatrice left half of her estate to Ernie and half in trust to Mary Louise Bregman, the daughter of Beatrice. Ernie was named as executor.

Ernie offered the will for probate and petitioned for letters testamentary; Mary filed a contest, which was withdrawn; the will was admitted to probate, Ernie's petition for letters was denied and United California Bank was appointed as administrator with will annexed.

Although Mary withdrew her contest to probate of the will she opposed court appointment of Ernie as executor; that issue went to trial and the court made its findings among which were those set out below.[1]

The only relevant conclusion of law was that the petition of Ernie for letters testamentary should be denied.

We cannot determine from the findings the reasons for the denial of the petition; whether it was because Ernie was the surviving partner of a business, or owed money to the estate, or was living in one of the apartments owned by the estate at an uncertain rental, or had beaten Mary at some time in the past and had threatened her, or had entered the safety deposit box without informing the bank of the death of Beatrice.

---

[1] "4. That prior to and at the time of her death, deceased had been engaged in a Mail Order business and during her marriage to ERNIE I. DULFON, decedent purchased a ten-unit apartment house located at 7018 Hawthorn, Los Angeles, California as her sole and separate property. 5. During the marriage of the decedent and ERNIE I. DULFON, the decedent loaned and advanced money to the said ERNIE I. DULFON and that the same was used by him for the purpose of engaging in various business enterprises, and that there is a conflict as to whether or not the said ERNIE I. DULFON is indebted to the estate in the sum of $1,200.00, or the sum of $5,000.00, or had repaid to the decedent any, all, or any portion of any sums so advanced; that the amount thereof remains to be settled and it appears his interests are adverse to said estate. 6. The said ERNIE I. DULFON is presently living on the premises of the apartment house and claims to be paying rent or rentals therefor in amounts which were not made certain at the time of the hearing. 7. That ERNIE I. DULFON is operating both the corporate business and the apartment house, and he may draw funds solely upon his own signature. 8. That during the lifetime and the marriage of the decedent, decedent and ERNIE I. DULFON were partners in business ventures, and there are remaining transactions which must be determined in order to settle the same. 9. That prior to the hearing, said ERNIE I. DULFON and the daughter of the decedent had been engaged in various disputes and arguments.'' Other findings (by reference to the objections) were that Ernie had threatened Mary on numerous occasions concerning her property rights, had previously beaten her while she was living with Ernie and Beatrice and that immediately after the death of Beatrice Ernie had entered the safety deposit box of Beatrice without witnesses present except an official of the bank who did not know that Beatrice had died, and that Ernie did not account to Mary for what the box contained.

█ We consider first the finding that Ernie was the surviving partner of Beatrice.

Respondent contends that a surviving partner is denied the right to serve as executor by section 421 of the Probate Code which reads: "The surviving partner of a decedent must not be appointed administrator of the estate if any person interested in the estate objects to his appointment." The word "executor" cannot be added to the section. The fact, alone, that one who is named as executor is a surviving partner does not render him disqualified to act as such.

As we understand the arguments in the brief of respondent she contends that without regard to section 421 the court under its duty to give the fullest protection to the interests of the estate has the right to refuse to grant letters to a named executor if he is a surviving partner. We do not know whether the court believed that on general principles letters testamentary should not be granted to a surviving partner, and we therefore turn our attention to the finding that Ernie was a surviving partner.

It is true that when questioned by respondent's attorney (not under Code Civ. Proc., § 2055) appellant testified that he was the partner of Beatrice in the mail order business, "the house at 7801 Hawthorne" and some lots at Desert Hot Springs, but it is clear that the witness did not know the difference between a partnership and the relationship of marriage.

The will listed the various items of property of the parties and declared their respective ownerships. The community property consisted of the furniture of two apartments in an eight-unit building at 7018 Hawthorn. Ernie owned as separate property a 1958 car, 10 shares of stock in "Bregman Enterprises, Inc." and a vegetable slicer invention. Beatrice owned as separate property the Hawthorn apartments, the furniture in six apartments, 2,285 shares of Bregman Enterprises, Inc., a car, $16,550 of savings deposits and a trust deed note of $2,200. The mail order business was not mentioned in the will but it evidently was run by the corporation which was almost wholly owned by Beatrice. There was no evidence that any business was carried on after the death of Beatrice or that the corporation had any property or any debts. The lots at Desert Hot Springs were not mentioned in the will and there was no evidence that either party owned lots there. There was no mention in the will and no evidence that Beatrice and Ernie owned any property as partners or that there were any

partnership affairs to be wound up. Ernie's calling himself a partner was merely the expression of an uninformed and erroneous opinion. If the petition for letters was denied upon the ground there was an existing partnership to be wound up the denial was in error.

This leaves as a possible reason for the order the testimony of Mary that Beatrice had told her that she had twice let Ernie have $5,000 with which to start different businesses and the testimony of Ernie that Beatrice had loaned him $1,200 with which to open a business which had long since folded, and that he had repaid the money.

The simple fact that one who is named as executor owed money to the decedent does not disqualify him from serving as executor. If Ernie was indebted to the estate it would be his duty as executor to return the amount as an asset of the estate and he would become liable as for money of the estate in his hands. (Prob. Code, § 602.)

It was alleged in the objections that Dulfon's interests were adverse to the estate. This blunt assertion was wholly inadequate, and, in any event, would not have constituted a disqualification. (*Estate of Daigh,* 59 Cal.2d 367 [29 Cal.Rptr. 273, 379 P.2d 761].)

Mary testified that she thought Ernie had struck her more than once; one time she had black and blue marks for weeks. She did not state when that had happened. Ernie's attorney helped out by developing testimony from Mary that Ernie had struck her another time when she was driving because they disagreed as to which street they would take. Ernie denied he had ever struck Mary. Although the court found that he had struck her we cannot believe he was denied the right to letters upon that ground. And if Ernie had struck Mary, the fact would have been known to Beatrice and she did not believe it rendered him unfit to act as executor.

There remains the finding that after the death of Beatrice Ernie entered her safety deposit box in the company of an official of the bank (doubtless the girl who had the key) who did not know Beatrice had died, and that he did not account to Mary for the contents of the box. Ernie testified that he did not examine the things he removed from the box; he put them in a sack and delivered them to his attorney. The attorney was participating in the trial. No one asked him what had been taken from the box. There was no evidence that Beatrice kept valuables in the box.

474

A final argument of respondent is that appellant once waived his right to be granted letters and should not be permitted to withdraw his renunciation of the right. The point is not valid.

Before the will was admitted to probate Ernie, and Mary, through her guardian, and through their respective attorneys, entered into a stipulation and agreement that the will be withdrawn and that the estate be administered as if Beatrice had died intestate. Ernie waived his right to act as executor. The agreement was expressly made subject to the approval of the court. The agreement was ineffectual because there were contingent beneficiaries who were not parties to it, and the court did not approve it. Appellant was not bound by his renunciation of his right to serve as executor.

No good reason was shown for refusing to grant letters testamentary to appellant.

It is a basic principle of the law of wills that the court has a duty to give the utmost effect to the wishes of the testator, consistent with the interests of the estate and the beneficiaries. (Prob. Code, § 101; *Estate of Wilson*, 184 Cal. 63 [193 P. 581]; *Estate of Lefranc*, 38 Cal.2d 289 [239 P.2d 617].) One who is named as executor cannot be denied the right to act as such without good reason. No good reason was shown for denying appellant's petition for letters.

Beatrice had confidence that Ernie would be a faithful and competent executor. She was in a better position than anyone else to judge of that fact. Unless she was shown to have been mistaken her wishes were binding upon the court. There was no evidence that appellant was dishonest or incompetent. The will does not waive Ernie's giving bond and he would be required to give bond (Prob. Code, § 541). He is the beneficiary of a half of a substantial estate. Any amount he may owe the estate can be deducted from his share. He will have to account for all assets and receipts, including the valuables, if any, abstracted from the safety deposit box. He will have to conduct a competent administration of the estate under the supervision of the court and the watchful eyes of respondent and her attorney. The merits of the controversy have been fully explored by diligent counsel. There is no need for a new trial and further delay should be avoided.

The order appealed from is reversed and the court is directed to amend its findings and conclusions so as to conform

to the views herein expressed, to vacate its order appointing United California Bank as administrator with will annexed and order that upon his qualifying as executor letters testamentary be issued to appellant; no costs of appeal to either party.

Ford, J., and Kaus, J., concurred.