[Civ. No. 14334. Second Dist., Div. Three. June 8, 1944.]

Estate of ELOISA S. MATHIE, Deceased. EDWARD MATHIE, Appellant, v. SERENITA GUTIERREZ SCHWARZE et al., Respondents.

768

Horace E. Vedder and David A. Sondel for Appellant.

Avery M. Blount and George I. Devor for Respondents.

WOOD, (Parker), J.—Under a will, dated June 15, 1939, and admitted to probate as a lost or destroyed will, decedent gave her property in equal shares to her husband and daughter, and provided therein that should "any devisee or legatee" contest said will his "share" should be revoked. This is an appeal by the husband from an order for "Ratable Distribu-

tion'' decreeing that he contested said will; that he forfeited all right to have any portion of the estate distributed to him; and that all of the estate (except a certain sum retained for taxes and costs) be distributed to decedent's daughter, subject only to the probate homestead which had been set aside to the husband for his lifetime. He also appeals from a judgment of ''Determination of Heirship'' that the daughter was the only person entitled to take under the will, and that the whole of the estate be distributed to the daughter. The approximate value of the estate is $34,000.

Decedent and appellant were married in 1914, when appellant was 50 years of age and decedent was 56 years of age. Appellant had not been married previously, but decedent had been married. The daughter referred to herein was decedent's daughter by such previous marriage. Appellant and decedent lived together until the time of her death on May 21, 1941.

On May 26, 1941, appellant filed a petition for letters of administration on decedent's estate. At a hearing on said petition on June 19, 1941, the petition was granted. Later that same day the clerk of the court telephoned to appellant's attorney and stated that the Farmers & Merchants National Bank had sent a letter to the county clerk, dated June 3, 1941, enclosing a copy of a will executed by decedent on February 18, 1927; that the will had been filed in the office of the county clerk on June 5, 1941, but it had just been sent over to the courtroom, and for that reason the hearing on the petition for letters of administration was being continued. (It appears that the order of June 19, 1941, granting said petition was vacated and not entered—the matter having been continued.) No attempt was made to probate the will of February 18, 1927.

On June 24, 1941, the appellant filed a petition for probate of a will dated August 16, 1938, and alleged that he had found the will after making a search of his home. That will gave $100 to decedent's brother; $50 a month for life to decedent's sister; $100 a month for life to decedent's daughter (the last two bequests to be paid from oil royalties, and to decrease in proportion to any decreases in said income); and the residue to appellant.

After said petitions had been filed, an attorney, who had

prepared a will for decedent which had been executed at the Farmers & Merchants National Bank on June 15, 1939, asked appellant's attorney whether he had a copy of said will. The bank did not have a copy of that will. Thereafter appellant allegedly made another search for a will and found a copy of the 1939 will. He delivered said copy to his attorney, who delivered it to the attorney who had prepared the will.

On July 11, 1941, the bank filed its petition for probate of the will of June 15, 1939, as a lost or destroyed will, and attached said copy of the will to the petition. On September 30, 1941, the bank filed an amended petition for probate of said will. In said amended petition it was alleged: that on the day said will was executed the appellant took the will into his possession; that said will was never revoked or cancelled, and it had been lost or destroyed; and that said will expressly revoked the will dated August 16, 1938, and named the bank as executor.

The three aforesaid petitions—for letters of administration, for probate of the will of August 16, 1938, and for probate of the lost or destroyed will of June 15, 1939—came on for hearing on October 27, 1941, at which time appellant dismissed his petition for probate of the will of August 16, 1938. The court, upon the hearing on the petition for probate of a lost or destroyed will, found: that the will of June 15, 1939, was decedent's last will and testament; that immediately after the execution of said will appellant took it into his possession; and that it "was lost or destroyed subsequent to the death of said decedent or it was destroyed fraudulently in the lifetime of the decedent without her knowledge." The court admitted the will of June 15, 1939, to probate as a lost or destroyed will, and dismissed the petition for letters of administration.

On June 2, 1942, appellant filed a petition for an order setting apart to him a probate homestead of five lots and a house thereon, where he resided, and alleged therein that the property selected for a homestead was community property of decedent and appellant. The daughter filed objections to the petition for a homestead, and the bank filed an answer to said petition. The daughter and the bank denied that the property was community property, and alleged it was separate property of decedent. On July 21, 1942, appellant stipulated and the court found, that the property was separate property of decedent; and the court made an order setting aside two and one-half of said lots, and the house thereon, as a homestead for appellant for the period of his life.

The executor filed its first account, and petitioned for ratable distribution. The daughter filed objections to said petition, and also filed a petition to determine who was entitled to distribution of the estate. She alleged, in part, in said petition: that appellant took possession of the original will (the will dated June 15, 1939, and admitted to probate as a lost or destroyed will) on the day of its execution and without the consent of decedent; that thereafter he fraudulently destroyed it, or fraudulently withheld and concealed it; that his subsequent acts in petitioning for letters of administration, in petitioning for probate of the 1938 will, and in inducing a witness to testify in opposition to the probate of the will of June 15, 1939, "with reference to the burning of said will," were fraudulent and in bad faith; that decedent did not have any conversation with appellant about burning the will as detailed by him in his testimony (referring to testimony given at the hearing on the petition for probate of a lost will); that appellant's petition for a homestead was false in that it stated said property was community property when he knew it was separate property of decedent; that by reason of all of said acts appellant contested the will of 1939 and attempted to defeat its provisions; and that appellant had forfeited all right to any of the estate, and petitioner (daughter) was entitled to the whole thereof. Appellant in his answer to said petition denied said allegations and alleged that he had searched in good faith for a will before he filed his petition for letters of administration, and that said petition "was permitted to remain on file pending the determination of the court as to the said lost or destroyed Will." The court, upon the hearing concerning distribution, found: that the will dated June 15, 1939, was decedent's valid and existing last will; that appellant had taken possession of it immediately after its execution without the consent of decedent, and thereafter fraudulently destroyed or concealed it; and that the daughter's allegations in her said petition were true. (Said allegations, as above shown, included an allegation that appellant contested the will of 1939.) In the conclusions of law the trial court stated that appellant "contested the last Will . . . of . . . decedent." The court decreed that the whole of said estate be distributed to the daughter, subject only to the probate homestead previously set aside to appellant for the period of his life.

Appellant's contentions on appeal are: that he did not contest the will; and that even if he did contest the will, thereby revoking the "share" provided for him in said will, that he was entitled to receive, under the laws of succession as one of the two heirs of decedent, one-half of the "share" so revoked, since the will contained no provision for the disposition of ineffectual bequests or devises.

There is no contention on this appeal that the property listed in the inventory of the estate was community property. Appellant, as above stated, filed a petition for a probate homestead in which he sought to have five lots and a house thereon, where he resided, set apart to him as a homestead. He alleged that said property was community property. At the hearing on said petition it was stipulated by appellant and found by the court that said property was separate property of decedent, and that there was no community property of appellant and decedent. No appeal was taken from that order, in which the court found that the estate property was the separate property of decedent, and the order has become final. The property set apart to appellant as a homestead was the house and one-half of the five lots, and was for the period of his life. Apparently, it was appellant's intention, in alleging that the property was community property, to obtain it absolutely and in fee instead of obtaining the use of it, as separate property, for a limited time.

A question arises as to whether there was sufficient evidence to support the trial court's finding that appellant fraudulently destroyed or withheld and concealed the original will dated June 15, 1939. The evidence shows that: appellant and decedent went to the bank in an automobile driven by appellant, but at that time he did not know her purpose in going there was to sign a will; decedent alighted from the automobile in front of the bank, and entered the bank; appellant then drove about one block farther, parked the automobile, and returned to the bank; he entered the office of a trust officer of the bank where decedent, the trust officer and two other employees of the bank (the two subscribing witnesses) were assembled.

The three bank employees testified that as appellant entered the room he asked what was going on; that the trust officer told him that Mrs. Mathie had just executed a will; that appellant walked over to the desk, took the will, and that was the last they saw of it. Two of the said employees

testified that appellant put the will in his pocket; that he appeared excited or angry, and that he stated he did not want decedent doing anything he didn't know about. The third bank employee testified that when the trust officer "informed Mr. Mathie that Mrs. Mathie had just executed her will," the appellant said, "I will take that out, she doesn't know what she is doing."

There were many inconsistencies in the testimony of appellant as to his demeanor and as to other happenings when, and after, he learned that his wife had made the 1939 will. Appellant testified that when he entered the trust officer's office he (appellant) said, "Boys, you are rushing things here. What are you doing?" and that the trust officer said, "Your wife just signed a will here, gives you and the daughter 50-50"; that he (appellant) said he "didn't like the idea," and, as far as he could remember, he said the will "didn't suit" him, that it "left out her sister and her brother"; that he "opened the will and then read the part of the 50-50"; that his wife "sat there just like she was stunned" and "didn't have nothing to say at all that day"; that, if he did put the will in his pocket, he later took it out and gave it to decedent and she put it in her purse; that he did not see the will again "until the next morning" when he saw decedent go out in the yard with the will in one hand and matches in the other, whereupon he said, "What are you doing there, Pet?" and she replied, "I am burning the will," —"I don't like it"; and that she burned it "and when she got through stamped on it." He also testified that he never saw the will again after decedent put it in her purse; that they did not discuss it on the way home from the bank; that after they reached home he "looked it over, but she simply put it away." Some of the testimony was as follows: "Q. When you got home, on that occasion, did you see that will in your home? A. I must have seen it because I knew what was in it. . . . The Court: At home, you said, 'Yes, I looked it over.' Now, did you? A. Yes. I seen the section in there about anybody contesting that will. It did nothing. It left it out, you see. . . . By the Court: Then you did read it after you got home? A. Yes"; "Q. [by counsel for daughter] Well, now, when after you got home did you talk—did you read that will? A. Well, after we got home. Q. That night or the next day or when? . . . A. I had time all day to do it, and the night. Q. You did what? A. I read it at

774

home at certain times. Q. Well, what time did you read it at home? A. What time? I don't remember that. . . . The Court: He wants to know what those certain times are. A. Oh, I don't remember that. . . . Q. [by counsel for daughter] You don't remember? A. No. Q. Well, do you remember in what room you were when you read it? A. Yes. . . . In the kitchen. . . . Q. But you don't remember whether it was at night or next day or when it was that you read it? A. I certainly read it. I didn't wait until the next day. I read it that day." Appellant testified that he "wanted to see if there was anything after the 50-50, who was going to get the property," and as soon as they got home, about noon, he asked her for the will and "She got it. She always hid everything." He also testified that he did not like the will because it left out "the sister and brother." When asked if he told her what he did not like about the will, he answered, "The poor woman at that time was in a bad mental condition and I didn't argue with her much, either way. I was thinking of the old will." Further testimony was: "Q. I am asking you, and when you say you talked with her, did you object to it because the sister and brother were left out? A. I can't answer you things that are so strange for you to understand. . . . The Court: Did you talk it over with her? A. No, I didn't talk about it at all with her."

Appellant's petition for letters of administration stated that "due search and inquiry have been made to ascertain if said deceased left any Will and Testament, but none has been found, and according to the best knowledge, information and belief of your petitioner said deceased died intestate." He did not make inquiry, however, of the daughter or at the bank where the 1939 will was executed. His testimony indicates he had knowledge of the existence of the 1938 will at the time he filed his petition for letters of administration. He first testified that he did not know of the execution of the 1938 will until he found it in a drawer after the petition for letters of administration had been filed, that "She done that alone," and "She never told me about it." He testified also that he found the 1938 will before his wife's death, "months before, I think." He testified also that he "couldn't say," when he found it; that he did not remember when he found it; that "she must have been dead" when he found it; that he had "never" seen it before she died; and that he "only found it once" before she died. He testified also: "Well, I might find

somebody that was there when I found it and told him, I might look him up. . . . Q. You don't know, then, whether there was any person present when you found it or not? A. I don't know that, no, but I have had nurses there time and again. Q. But the nurse wasn't there after your wife died? A. No, she died in the hospital.'' He testified also: that when his wife executed the 1939 will at the bank, he (appellant) knew about the 1938 will; that his recollection was entirely clear on the 1938 will, and that he did not see it until after his wife's death; that he didn't know she had made a previous will in which her brother and sister had been provided for, ''she seemed to keep that as a secret.'' A witness, who was a real estate broker, called by appellant, testified that he had known decedent about 40 years and appellant about 35 years; that he had drawn many documents for decedent, including a will in 1936 and one in 1938, both of which he witnessed; that he thought appellant was the one who telephoned him to come to the Mathie home to make the 1936 will, but there ''was nobody present'' when the will was drawn except decedent and the witnesses; that he was ''satisfied'' that appellant was not present when he drew the 1938 will; that decedent called him later to come to her home to draw some other documents for her and the witness asked her if it was another will, and she answered ''No,'' that she had ''burned the will.'' (It does not appear which will was so referred to.) The other witness to the 1936 and 1938 wills testified that on one of the occasions, when she witnessed decedent's will, she went to the Mathie home to be such a witness, and appellant was present; that on the other occasion decedent and the other witness (the broker) brought the will to the home of the witness, but she could not remember whether it was the 1936 or the 1938 will which they brought to her home.

The trial court had the benefit of personal observation of the witnesses. ■ The appellate function, in reviewing findings of fact, is to consider not the relative weight of conflicting evidence, but only the legal sufficiency of the evidence to support the findings. (*Dell* v. *Hjorth* (1942), 51 Cal.App. 2d 576, 578 [125 P.2d 505].) ■ The trial court found, by necessary implication from the findings of fact that were made, that the testimony of appellant that decedent burned the 1939 will was untrue. The evidence was sufficient to sup-

port the trial court's findings that appellant took possession of the original 1939 will on the day of its execution, without the consent of decedent, and thereafter fraudulently destroyed or concealed it; that he was acting in bad faith when he filed his petitions for letters of administration, for probate of the 1938 will, and for a homestead—alleging that the property was community property. It is to be noted that the judge, who presided at the hearing of the petition for probate of the 1939 will as a lost or destroyed will, made findings which were similar to the findings of the trial court herein with respect to the loss or destruction of the 1939 will.

 It is next to be determined whether appellant's acts constituted a *contest* of the 1939 will. Appellant contends that he did not contest the will. The provision of that will with reference to a "contest" is: *"If any devisee or legatee hereunder contest this Will, or any part or provision hereof, any share given to such devisee or legatee is hereby revoked and shall become void."* (Italics added.) Such a provision in a will is valid and is to be given effect according to the intent of the testator. (*Lobb* v. *Brown* (1929), 208 Cal. 476, 484, 485 [281 P. 1010].) Whether there has been a contest within the meaning of the language used in a will is to be determined according to the circumstances in each particular case. In the *Estate of Hite* (1909), 155 Cal. 436 [101 P. 443, 17 Ann.Cas. 993, 21 L.R.A.N.S. 953], it was said at page 441, that the word "contest," as used in a will therein, was not to be "construed according to its popular and primary meanings—to oppose, dispute, contend, or controvert," but was to be given legal significance, and (p. 442) "there are various legal significations in which the word is employed." It was further stated in that case, at page 442: "The basic question for determination is the meaning of the word *as employed by the testator*, and that determination is to be arrived at from a consideration of his purpose and the end which he sought to attain. . . . [and at page 443] What, then, was the real purpose which the testator sought to effectuate by the simple and understandable word which he employed? For, having found that meaning, the law will give it due effect. That purpose, it seems to us, is plainly to be discerned. It was, as said by the Supreme Court of the United States in the Smithsonian Institution case [169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793], to prevent the invocation of any of the technical rules of law to be employed to thwart

his expressed wishes; it was to prevent all attacks upon his character, reputation, or sanity by dragging into publicity his private life, and it was equally to secure to the beneficiaries whom he named, the fruits of his bounty. When it appears that the effect of the legal action which a contestant has taken has been to thwart the testator in any of these most obvious purposes, can the party, who has deliberately and designedly taken such action, be heard to say that he has not contested? We think not.'' In the present case the will provided that all of decedent's estate was to be distributed to appellant and her daughter ''in equal shares,'' and further that she had ''intentionally'' omitted to provide for her heirs except as provided for in the will. The testatrix desired that her entire estate be divided equally between her daughter and the appellant only. The effect of the 1938 will, had it been admitted to probate, would have been to defeat those intentions of the testatrix and would have placed appellant in a more favorable position with respect to the estate. If the probate homestead had been awarded to appellant absolutely, on the basis that the property was community property, the intention of testatrix that her estate should be divided equally between her daughter and appellant would have been defeated. It is to be noted that if appellant's petition for letters of administration had been granted and the estate distributed under the rules of succession, that appellant and the daughter, being the only heirs, would have received the same proportions of the estate as provided for them in the 1939 will. In either event each would have received one-half. Appellant asserts that he filed his petition for probate of the 1938 will before the bank filed its petition for probate of the 1939 will, and that ''when it had become apparent that such will had been revoked by the later will of June 15, 1939,'' appellant voluntarily dismissed his petition for probate of the 1938 will, and therefore such petition did not amount to a contest. It was not necessary that the proceeding be carried to an unsuccessful conclusion in order to constitute a contest. In the *Estate of Bergland* (1919), 180 Cal. 629 [182 P. 277, 5 A.L.R. 1363], a will contained a clause revoking the legacy of any legatee who should contest the will. A daughter of the testator, who was a legatee in that will, petitioned for the probate of an alleged later will, but she did not know it was a spurious will. She dismissed

her petition when it came on for hearing. The court held (p. 636) that "an attempt in good faith to probate a later purported will, spurious in fact, but believed to be genuine by the party seeking its probate, does not fall within the forfeiture clause [regarding a contest]," and that the daughter had not contested the will. Further, in response to a contention that in order to amount to a contest "the proceedings must have been carried to the point of a hearing and trial," the court said at page 635: "The attempt was there, manifested by overt acts designed and taken for the purpose of bringing about a different disposition of the estate, assuming that the instrument was known to the daughter not to be genuine. The fact that she desisted from her attempt before actually going to trial is immaterial. The attempt was made and that is enough." Although appellant dismissed his petition for probate of the 1938 will, the evidence was sufficient to support the finding of the trial court that appellant had acted in bad faith in filing that petition and in other respects as above stated. The combination of the acts of appellant in filing petitions for letters of administration, for probate of the 1938 will, for a homestead on five lots alleging the property was community property, which acts were committed in bad faith as found by the trial court upon sufficient evidence, and the act of appellant in fraudulently destroying or concealing the 1939 will as found by the trial court upon sufficient evidence, constituted a contest of the 1939 will within the meaning of the word "contest" as used therein. In addition to this, appellant testified that he had seen his wife burn the will. Had he succeeded in convincing the court that it had been so destroyed he would have accomplished a direct and effective contest of the will within the meaning of the contest clause.

 Appellant contends further, as above stated, that even if he did contest the will, thereby revoking the "share" provided for him in the will, he was entitled to receive, under the laws of succession as one of the two heirs of decedent, one-half of the "share" so revoked, since the will contained no provision for the disposition of ineffectual bequests or devises.

The 1939 will provided in part: "I, Eloisa S. Mathie . . . do make, publish and declare this my last Will and Testament and hereby revoke all former Wills and Codicils:

"First: I direct my Executor to pay my just debts and expenses of last illness and burial.

"Second: I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of whatsoever consisting and wheresoever situate, in equal shares, to my daughter, *Serineta Gutierez* Schwarze, and my husband, Edward Mathie.

"Third: I have, except as otherwise in this Will specified, intentionally and with full knowledge omitted to provide for my heirs living at the time of my decease.

"Fourth: If any devisee or legatee hereunder contest this Will, or any part or provision hereof, any share given to such devisee or legatee is hereby revoked and shall become void.

"Fifth: I appoint as Executor hereof The Farmers and Merchants National Bank of Los Angeles. . . ."

The "Fourth" paragraph of the will provides that any share given to a legatee or devisee who contests the will shall be revoked and become void, but it does not provide that such legatee or devisee shall not receive any part of the estate. ▆ Ineffectual legacies and devises pass into the residuum unless a contrary intention is shown by the will. (*Estate of Walker* (1925), 196 Cal. 323, 327 [237 P. 1070].)

▆ In considering whether there is a residuary legacy or devise in the will, it is to be noted that the "Second" paragraph which refers to "all the rest, residue and remainder" is the only provision in the will which makes any disposition of the estate. That provision disposes of her entire estate. The "First" paragraph merely directs the payment of debts and expenses of last illness and burial, which were required by law to be paid irrespective of the provisions in the will. In *Childs* v. *Gross* (1940), 41 Cal.App.2d 680 [107 P.2d 424], it was said at page 684: "The debts and funeral expenses are charges against the estate, and could not constitute bequests. A 'residuary clause' has been defined to be the clause in a will by which that part of the property is disposed of which remains after satisfying bequests and devises. (69 C.J., p. 413, § 1472.) As there were no bequests or devises other than the trust provision which disposed of the entire estate, there was no 'residue' involved." (See *Estate of Moorehouse* (1944), *ante*, p. 210 [148 P.2d 385].) There is no residuary legacy or devise in the present will.

Since there is no residuary legacy or devise, the decedent died intestate as to the portion of the estate which appellant would have received under the will, unless that portion was otherwise disposed of by the will. There is no provision in the will directing what disposition shall be made of a "share" which is "revoked" and becomes "void," as a result of a contest of the will. It was argued by the daughter that paragraph "Third" of the will prohibits appellant, after a contest of the will by him, from receiving a portion of the estate as an heir. That paragraph states: "I have, except as otherwise in this Will specified, intentionally . . . omitted to provide for my heirs. . . ." Appellant is one of the two heirs, and provision for him was "otherwise in this Will specified," in that, it was provided in another paragraph of the will he should receive one-half of the estate, subject to the revocation of such provision if he should contest the will. The testatrix, therefore, did not omit to provide for appellant, who was an heir. Even if a proper construction of said paragraph "Third" is that the testatrix did not intend that appellant should receive any part of her estate if he contested the will; nevertheless, the testatrix did not direct what disposition should be made of the portion appellant would have taken if he had not made a contest. Paragraph "Fourth" merely provides that "any share" of a beneficiary shall be revoked and "become void" in the event of a contest by such beneficiary. Said paragraph does not include the provision that is frequently in a contest clause that if a beneficiary contests the will he shall not receive any part of the estate. Even if said paragraph "Fourth" had included such a provision that the beneficiary should not receive anything if he contested the will, there was no provision therein directing what disposition should be made of the portion appellant would have received if he had not contested. It was also argued by the daughter that the other heir mentioned as a beneficiary in the will, the daughter, would be entitled to receive the portion which appellant would have received, since the will provided that no heir other than the two mentioned should receive any part of the estate, and since the appellant could not receive his portion that the daughter is the only remaining heir not prohibited by the will from receiving a part of the estate. The will provided, however, that the daughter should receive only one-half of the estate, and did not provide that she should receive the portion which

appellant would have received if he had not contested the will. The court cannot add to or change the provisions of the will, and therefore cannot order that the ineffectual legacy or devise, the portion provided for appellant, be distributed to the daughter. A provision, allegedly disinheriting heirs, and similar to paragraph three of testatrix's will, was involved in the *Estate of Fritze* (1927), 85 Cal.App. 500 [259 P. 992], wherein testatrix made several bequests, including two to charitable institutions and one to one of her three sisters, and further provided: "It is my will and intent that not any of my relatives or heirs, other than as hereinbefore set forth, shall take or receive any share or portion of my estate. I do not leave anything to my sisters, Margaret and Catherine, of Malden, Massachusetts, as each of them has plenty of this life's possessions." There was no residuary clause, and a portion of the charitable bequests lapsed because the bequests were in excess of the amount allowed by law to be left to such institutions. The trial court awarded the entire lapsed portion to the sister who was a legatee under the will, and decreed that Margaret and Catherine were not entitled to share in the distribution of such lapsed legacy. In reversing the trial court, the District Court of Appeal stated (p. 505): "A testator must do more than merely evince an intention to disinherit before the heir's right of succession can be cut off—he must make a valid disposition of his property. (*Estate of Walkerly*, 108 Cal. 627 [49 Am. St.Rep. 97, 41 P. 772]; *Campbell-Kawannanakoa* v. *Campbell*, 152 Cal. 201, 207 [92 P. 184].) The rules of construction to be applied in cases of this character are well settled. The primary purpose of all such rules is to ascertain the testator's intention (§ 1317, Civ. Code), not some undeclared purpose which may be supposed to have been in his mind, but the intention disclosed by the words he has used. If the plan adopted by the testatrix cannot be given effect because it violates the rules of law, the court is not authorized to substitute for the illegal provisions some other which it may suppose would have been adopted by her if she had known that the directions actually given could not be carried out; in other words, the court cannot under the guise of construction make a will for the testatrix in the place of the one she has made. . . . As in the case of innumerable wills, the testatrix did not anticipate the invalidity of her gift to charity

and did not provide for the disposition of the elapsed gift in the event of such invalidity, which she could easily have done if she so desired. What her actual intent may have been in the event of the invalidity of such gift to charity we have no means of knowing. It cannot be assumed that she would have given all of this excess to her sister Mary Malone [the legatee]. . . . she might have divided it equally among all of the legatees, or given it to other persons not mentioned in her will at all. . . . The situation is one where, as in the *Estate of Hittell*, 141 Cal. 432 [75 P. 53], the testatrix did not anticipate every contingency. That she so failed furnishes no excuse for the execution of a will by judicial construction.'' The portion provided for appellant which he could not receive by reason of the contest was not disposed of by will, and decedent died intestate as to that portion of her estate.

Respondent contends that the matter of intestacy as to the portion provided for appellant in the will could not be raised for the first time on appeal. The reporter's transcript includes appellant's notice of intention to move for a new trial, but does not include his points and authorities which appellant asserts were attached thereto. Appellant's reply brief includes a copy of the points and authorities which appellant asserts were attached to his said notice of intention to move for a new trial. Those points and authorities show that appellant made the same contention, regarding intestacy, on the motion for a new trial that he has made on this appeal. Said points and authorities, being appended to appellant's brief, do not constitute part of the record herein. This court could, on its own motion, order that the record be augmented to include said points and authorities (Rules on Appeal, rule 12 (a) ). It appears that if the record were so augmented, it would then show that the question concerning the distribution of one-half of the estate under the laws of succession was not raised for the first time on appeal. The ultimate question before the trial court, after determining the question of fact as to whether there was a contest, was a question of law as to the interpretation of the will. It is not necessary to augment the record, in the respect above mentioned, for the reason that the question before this court, after the facts necessary for a proper interpretation of the will have been determined by the trial court upon sufficient evidence to support such determination, is a question of law

as to the interpretation of the will. The question of law as to how the estate should be distributed, under the facts found by the trial court, is properly before this court, irrespective of whether the matter of distributing a portion of the estate under the laws of succession was presented to the trial court.

The order and judgment are modified by directing that one-half of said estate be distributed according to the laws of succession; and, except as so modified the said order and judgment are affirmed. Appellant to recover costs on appeal.

Desmond, P. J., and Shinn, J., concurred.