Filed 7/9/14  Dilworth v. Tiernan CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROSEMAE B. DILWORTH,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>MARILYN M. GRAY TIERNAN, as Trustee, etc.,<br><br>　　　　Defendant and Respondent. | A139476<br><br>(Contra Costa County<br>Super. Ct. No. MSP12-01384) |

Magnolia Dilworth Austin established the Magnolia Dilworth Austin Trust (the trust) in 1990 and amended its terms in 2002.  Austin died in 2012.  The trust document provided that on her death, after payment of certain expenses and taxes, the "remaining balance" of the trust estate was to be distributed in two shares.  One share was to go to her niece, Cassandra Lyles, but if Lyles died before Austin, that share was to go to her friend, Virginia Saxton.  Both Lyles and Saxton died before Austin, so the share in question is a failed bequest.  The other share was to go to Saxton, but if Saxton died before Austin, the share was to go to Saxton's surviving issue, by right of representation.

Rosemae Dilworth is another of Austin's nieces.  She petitioned the probate court for an order declaring that the share in question be distributed to Austin's estate, from there presumably to be distributed according to the rules governing intestacy.  Marilyn Tiernan is the daughter of Saxton and a beneficiary of the trust.  Tiernan maintained that

1

under Probate Code[1] section 21111, subdivision (b), the share in question, like the other share, should go to Saxton's surviving issue. The probate court agreed with Tiernan and, after issuing an order interpreting the beneficiary provisions of the trust document, dismissed Dilworth's petition.

The sole issue on appeal is how the share of the trust that is a failed bequest should be distributed. Following de novo review, we affirm the judgment of the probate court.

## BACKGROUND

### I. *Factual Background*[2]

Austin died on March 23, 2012, at 99 years of age. She had no surviving children or siblings, but did have seven nieces and nephews, including Dilworth. Virginia Saxton was a friend of Austin and Tiernan is Saxton's daughter. Rosemae Lyles (Rosemae), Austin's sister, had a daughter, Cassandra Lyles (Lyles). Rosemae, Lyles, and Saxton all predeceased Austin.

In May 1990, Austin created the trust. When it was created, Austin transferred 11 properties to the trust—five items of real property, two automobiles, three bank accounts, and a retirement account.[3] Austin reserved the rights to add additional property to the trust and to remove property from the trust.

Article VI of the trust document specified: "A. Upon the death of Trustor, Trustee shall pay all expenses of last illness, funeral and burial expenses and all inheritance, estate or other death taxes that may be amassed by reason of Trustor's death. [¶] B. The Trustee shall distribute all bank accounts to Cassandra Lyles and divide the

---

[1] Unless otherwise indicated, all statutory references are to the Probate Code.

[2] Personal information concerning the people involved in this matter is taken from the parties' briefs on appeal. The personal facts briefly provided here are not in dispute.

[3] An exhibit attached to the trust document lists these properties, but the record before us does not include evidence that title to any of these properties was actually transferred to the trust. The probate court observed in its order interpreting the trust document that "Tiernan notes in her opposition to [Dilworth's] opening brief that trust assets have been exhausted in the care of Ms. Austin. To the extent this is true, the trust dispute may not have any practical consequence."

remaining trust assets into two equal shares and distribute one share to Trustor's sister Rosemae Lyles and distribute the other share to Trustor's niece Cassandra Lyles. Should Rosemae Lyles not survive Trustor, then her share shall be distributed to Cassandra Lyles. Should Cassandra Lyles not survive Trustor, then her share shall be distributed to her issue, by right of representation."

In 2002, Austin executed an amendment to the trust. The amendment replaced paragraph B of article VI with the following: "B. The Trustees shall distribute the remaining balance of the Trust Estate in two equal shares as follows:

"1. One (1) such equal share to Trustor's niece Cassandra Lyles if she is then surviving, and if not, then to Trustor's friend Virginia D. Saxton, whose address was set forth previously.

"2. One (1) such equal share to Trustor's friend Virginia D. Saxton, whose address was set forth previously, if she is then surviving, and if not, then to her surviving issue by right of representation."[4]

On the same day that Austin executed the amendment to the trust, she also executed a will. In the will, Austin made the specific bequest of a gold coin to Lyles. Remaining personal effects were to go first to Lyles; then to Saxton, should Lyles predecease Austin; then to Saxton's surviving children, should Saxton predecease Austin. The will specified that the remainder of the estate was to be distributed to the trust. Further, Austin made clear that she intended to dispose of all of her remaining property through the will and the trust, and not to leave anything to pass through intestacy.

In January 2013, Dilworth filed a first amended "class action" petition, on behalf of herself and unnamed nieces and nephews of Austin, seeking: (1) "a determination of the court that Dilworth herself, and in addition as a class representative of the group of seven nieces and nephews that survived Austin's death, are collectively heirs at law and are thereby entitled to share of one-half of Austin's estate under the laws of intestacy";

---

[4] We refer to article VI(B) of the trust document as "paragraph B." When referring individually to B(1) and B(2), we refer to them as "part B(1)" and "part B(2)."

(2) injunctive relief requiring the trustee to divide trust assets and to place one-half of such assets under control of a special administrator for Austin's estate; (3) an accounting of Austin's estate; and (4) appointment of a special administrator for Austin's estate.[5]

In March 2013, Dilworth submitted a petition seeking the court's declaration that one-half of the assets of the trust be distributed to Austin's estate, from there to benefit Dilworth and the other six surviving nieces and nephews. Tiernan opposed Dilworth's petition.

On April 17, 2013, the court filed an order interpreting paragraph B of the trust as a residuary clause. Part B(1) fails because Saxton and Lyles both predeceased Austin. The court concluded that by operation of section 21111, subdivision (b), the share specified in part B(1) was to be distributed as directed in part B(2). Accordingly, the failed share would pass to the surviving issue of Saxton and not to Dilworth and the other surviving nieces and nephews of Austin.

On September 5, 2013, the court entered final judgment in the case, dismissing Dilworth's "class action"[6] petition and incorporating its prior order interpreting paragraph B.

Dilworth timely filed a notice of appeal.

---

[5] The petition named as respondents Tiernan, as former conservator of the estate and person of Austin, and her husband, Kevin Tiernan (Kevin), as trustee of the trust. The 2002 amendment to the trust named Saxton as successor trustee, followed by Kevin if she were unable to serve, followed by Tiernan. Kevin filed no response to the petition and Tiernan's response identified herself as former conservator and trustee. The probate court's order interpreting the trust document identified Kevin as the trustee, but noted that it had been unable to ascertain whether he had been served with the petition. Thus, there is confusion in the record as to whether Tiernan or Kevin is the current trustee. Given that Tiernan identified herself as trustee in the probate court and Dilworth identifies her as trustee in her opening brief on appeal, we refer to Tiernan as the trustee here. The issue presented on appeal is independent of the identity of the trustee.

[6] The probate court did not address Dilworth's attempt to proceed as a class action and neither do we.

4

**DISCUSSION**

The sole issue on appeal is how the lapsed gift specified in part B(1) should be distributed. We review de novo the interpretation of a trust. (*Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1130.) Following de novo review, we conclude that the probate court's analysis was thorough, competent, and correct.

**I.** *Austin did not Intend to Benefit Dilworth and Unnamed Nieces and Nephews*

The Probate Code contains general provisions for the interpretation of wills, trusts, and other instruments. (§ 21101 et seq.) "(a) The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument. [¶] (b) The rules of construction in this part apply where the intention of the transferor is not indicated by the instrument." (§ 21102, subds. (a)-(b).)

Although Dilworth bases the bulk of her argument on the provisions of section 21101 et seq., she also refers to Austin's "manifest intent" and states: "[T]he trust instrument speaks for itself: Austin . . . *did not want* [both shares of the trust estate] *to go to Saxton's heirs*." If we agreed with Dilworth that the trust document shows that Austin intended the gift specified in part B(1) to lapse if both Lyles and Saxton predeceased her, and for that gift to then pass via intestacy provisions, then section 21101 et seq. would not apply at all and our inquiry would be at an end. However, Dilworth reads too much into the simple fact of a lapsed gift, which in this case could easily mean nothing more than a failure on Austin's part to contemplate that both Lyles and Saxton would predecease her, or a lack of understanding that part B(2) might not be read to supply a beneficiary of the gift in part B(1) should both Lyles and Saxton predecease her.

In order to determine Austin's intent with regard to part B(1) if both Lyles and Saxton predeceased her, we may employ extrinsic evidence "to the extent otherwise authorized by law." (§ 21102, subd. (c).) Tiernan urges us to find Austin's intent by reference to Austin's will and by reference to part B(2).

The will and the trust together identify only two specific and two class beneficiaries: Lyles, Saxton, the surviving children of Saxton, and the surviving issue of Saxton. The will, executed at the same time as the amendment to the trust document,

5

expressly states Austin's intent to "omit[] to provide herein for any of my heirs." Whatever Austin's intent concerning how the lapsed gift specified in part B(1) should be distributed, we can safely conclude that it was not to benefit Dilworth and the other unnamed nieces and nephews.

Among the provisions of Austin's will is: ". . . all of my remaining personal effects shall be distributed by the Executors to my niece Cassandra Lyles. If my niece Cassandra Lyles should die prior to distribution, then my personal effects shall instead go to my friend, Virginia D. Saxton. If my friend Virginia D. Saxton should die prior to distribution, then my personal effects shall go to her surviving children . . . ." Tiernan argues that this indicates an intent that should Lyles and Saxton predecease her, the share of the trust disposed of by part B(1) should go to Saxton's issue. While the provision of the will was limited to personal effects and Austin could have had a separate intent concerning the contents of the trust, it does suggest an "apparent intent" (as the probate court put it) for Saxton's issue to take under part B(1) should both Lyles and Saxton predecease her. We need not decide, however, whether this apparent intent is so well established that we can declare it to be Austin's actual intent, because, if not, application of section 21111 forces the same result.

## II. *Application of Section 21111*

Both Dilworth and Tiernan rely on section 21111, but differ in their theories of how its provisions apply to part B(1).

Section 21111 provides, in relevant part: "(a) Except as provided in subdivision (b) and subject to Section 21110,[7] if a transfer fails for any reason, the property is transferred as follows:

---

[7] Section 21110, subdivisions (a) and (b), provide that "if a transferree is dead when the instrument is executed, or fails . . ., the issue of the deceased transferee take in the transferee's place in the manner provided in Section 240," unless "the instrument expresses a contrary intention or a substitute disposition." Section 21110, subdivision (c), specifies that "[a]s used in this section, 'transferee' means a person who is kindred of the transferor or kindred of a surviving, deceased, or former spouse of the transferor." Here, Lyles was kindred of Austin, but her issue do not take in her place because the trust

6

"(1) If the transferring instrument provides for an alternative disposition in the event the transfer fails, the property is transferred according to the terms of the instrument.

"(2) If the transferring instrument does not provide for an alternative disposition but does provide for the transfer of a residue, the property becomes a part of the residue transferred under the instrument.

"(3) If the transferring instrument does not provide for an alternative disposition and does not provide for the transfer of a residue, or if the transfer is itself a residuary gift, the property is transferred to the decedent's estate.

"(b) Subject to Section 21110, if a residuary gift or a future interest is transferred to two or more persons and the share of a transferee fails for any reason, and no alternative disposition is provided, the share passes to the other transferees in proportion to their other interest in the residuary gift or the future interest.

"(c) A transfer of 'all my estate' or words of similar import is a residuary gift for purposes of this section."

Dilworth's theory is that paragraph B *is not* a residuary clause and instead represents "two specific bequests, neatly dividing up the eleven specifically identified pieces of property covered in the trust." With this understanding of paragraph B of the trust document, section 21111, subdivision (a)(3) applies because there is no residuary clause, and the share disposed of by part B(1) is transferred to Austin's estate, from which Dilworth presumes it would be disposed of under provisions governing intestacy.

Tiernan's theory is that paragraph B *is* a residuary clause and therefore section 21111, subdivision (b) applies. Under that provision, the transfer of the share specified in part B(1) fails, so it is distributed to the other transferees of the residuary gift, in this case to the issue of Saxton, under part B(2).

---

document expresses a substitute disposition (Saxton). Saxton's issue do not take under section 21110 because Saxton was not kindred of Austin. Accordingly, section 21110 does not govern the failed transfer specified in part B(1).

7

Whether we accept Dilworth's or Tiernan's theory depends on whether paragraph B is or is not a residuary clause. "A residuary clause is one by which the testator disposes of property that remains after other devises are satisfied." (14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 243, p. 322.) "No particular language is necessary; the clause is sufficient if it shows an intention that the surplus after payment of other gifts shall go to some designated person or persons." (*Ibid.*) What may seem to be a residuary clause may be "spurious": "A single gift of 'all' property does not constitute a residuary clause." (*Id.* at p. 323, citing *Estate of Mathie* (1944) 64 Cal.App.2d 767, 779.) However, section 21111, subdivision (c), renders such a single gift of "all" property a residuary clause for purposes of that section. We make this observation because paragraph B is the only actual bequest contained in the trust document.[8]

Paragraph B begins with the words: "The Trustee shall distribute the *remaining balance* of the Trust Estate in two equal shares as follows" (italics added). Because there are no preceding dispositions of property in the trust, the effect of these words is to transfer the entire trust estate (after payment of expenses and taxes). We can draw no conclusion other than that the words used have "similar effect" to a disposition of "all my estate" and, thus, that paragraph B is, for purposes of section 21111, a residuary clause.

Dilworth's argument that paragraph B is not a residuary clause and represents two specific gifts, shares of the 11 properties identified as being part of the trust in 1990, is unsupported. "A specific gift is a transfer of specifically identifiable property." (§ 21117, subd. (a).) Paragraph B refers to no specifically identifiable property.[9] Instead, it refers to whatever happened to be owned by the trust at the time of Austin's death. Because Austin had the power to dispose of properties in the trust or transfer other properties to the trust during her lifetime, there was no reason to contemplate, when

---

[8] The direction in paragraph A of Article VI that the trustee pay certain expenses and taxes is not a bequest. (*Estate of Mathie*, *supra*, 64 Cal.App.2d at p. 779.)

[9] We note that before amendment, the trust made a specific gift of all bank accounts held by the trust to Lyles before disposing of the remainder in two shares. The 2002 amendment eliminated reference to the bank accounts and instead disposed of the entire trust estate in two shares.

Austin created the trust in 1990 or amended it in 2002, that upon her death the trust estate would bear any necessary relationship to the original 11 properties to which the trust held title.

Dilworth argues that "Austin identified her trust estate with great specificity by describing eleven individual properties in detail, and then divided these properties with equal specificity." Austin did no such thing. Austin simply listed the initial assets held in trust in 1990; she was not attempting to describe what the trust estate would comprise when she died 22 years later. Further, accepting Dilworth's argument would seem to mean that whenever a trust document identifies the properties to which the trust holds title when it is created, the trust could not contain a residuary clause because any reference to the remainder of the trust could refer only to the specifically identified properties. That is not the law.

Finally, Dilworth misreads the Law Revision Commission's comments on section 21111, stating: "Indeed, the Law Revision Commission's comment to [section] 21111 (which the probate court cited to approvingly) expressly relies upon *Estate of Russell* [(1968) 69 Cal.2d 200, 215-216]; [] *Estate of Kelleher* [(1928) 205 Cal. 757, 760-761]; and *Estate of Anderson* [(1985) 166 Cal.App.2d 39, 42], three cases that predate the current statutory scheme and that support the rule that if a bequest lapses, the property must pass by intestacy laws, since that is manifestly the testator's intent. The Law Revision Commission's reference to *Estate of Russell* is an especially telling one."

The Law Revision Commission's comments to section 21111 state: "With respect to a residuary devise, subdivision (b) abolishes the 'no residue of a residue' rule, illustrated by *Estate of Murphy* [(1910) 157 Cal. 63, 106]. It preserves the change made by former Section 6148 in the California case law rule that if the share of one of several residuary devisees fails, the share passed by intestacy. [Citations to *Estate of Russell*, *Estate of Kelleher*, and *Estate of Anderson*.]" (31 Cal. Law Revision Com. Rep. (2001) p. 198.) Rather than approving of *Estate of Russell*, the comments note that the common law rule on which Dilworth relies had been previously superseded by statute and that this change was preserved in section 21111.

9

We conclude that paragraph B is a residuary clause and that, by operation of section 21111, subd. (b), the failed bequest of part B(1) is to be distributed to Saxton's issue, by right of representation, as specified in part B(2).  This conclusion is in accord with Austin's apparent intent and with the rule of interpretation that intestacy is to be avoided:  "The words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative.  Preference is to be given to an interpretation of an instrument that will prevent intestacy or failure of a transfer, rather than one that will result in an intestacy or failure of a transfer."[10]  (§ 21120.)

---

[10]  Dilworth relies on *Estate of Mathie*, *supra*, 64 Cal.App.2d at page 781 [forfeiture provision cut off contesting husband, but, in absence of residuary clause, intestacy resulted as to that portion, and he took share as heir], which Witkin cites for the proposition that "[w]here the language of a will is clear and certain, the fact that the testator failed to provide for a contingency does not justify application of the rule against intestacy.  It is improper to read into the will changes based on speculation about what might have been the testator's intent had the testator foreseen the development."  (14 Witkin, Summary of Cal. Law, *supra*, § 202, p. 274.)  Whatever common law rules might apply in other circumstances, statutory provisions compel the outcome here, as we have discussed.

**DISPOSITION**

The judgment of the probate court is affirmed.

_____
Brick, J.*

We concur:

_____
Kline, P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11