Filed 6/20/24  Public Guardian of L.A. County v. Talbot CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PUBLIC GUARDIAN OF LOS ANGELES COUNTY, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SUSAN TALBOT,<br><br>    Defendant and Appellant. | B325728<br><br>(Los Angeles County Super. Ct. No. BP125677)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 29, 2024, be
modified as follows:

1. On page 7, the second full paragraph, beginning "First, Susan argues" is deleted and the following paragraph is inserted in its place:

> First, Susan argues that the Public Guardian has a duty to take her personal circumstances into consideration because *she* is an unnamed beneficiary of the Trust, and trustees have "a duty to administer [a] trust solely in the interest of the beneficiaries." (§ 16002, subd. (a).) We have doubts—and Susan cites no cases supporting her argument—that a trustee automatically and inherently owes this duty to all unnamed "heirs" who may, by virtue of intestate estate principles, eventually be entitled to a trust's residuum. Our doubts are heightened by the fact that this is a special needs trust, which focuses chiefly on ensuring the care of the named beneficiary and the payment of that beneficiary's expenses. (E.g., § 3604.) But even if we were to assume such a duty exists, Susan proffers no authority that this duty robs the trustee of its expressly conferred authority to put trust property up for sale to pay the trust's debts, at least in a situation where, as here, the sale will eventually be subject to court scrutiny and the court can assure that the sale is consistent with the heir-beneficiary's interest.

\*       \*       \*

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.

Filed 5/29/24  Public Guardian of L.A. County v. Talbot CA2/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PUBLIC GUARDIAN OF LOS ANGELES COUNTY, as Trustee, etc., | B325728 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BP125677) |
| v. | |
| SUSAN TALBOT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael C. Small, Judge.  Affirmed.

Robert L. Kern and Russell A. Dalton, Jr., for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Laura Quiñonez, Assistant County Counsel, and Selina Thomasian, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \*

Susan Talbot (Susan)[1] challenges the probate court's order granting the Los Angeles County Office of the Public Guardian (the Public Guardian) permission to sell a single-family home as part of wrapping up a special needs trust after the beneficiary of that trust died with outstanding debts. Because the court did not abuse its discretion in granting the Public Guardian's petition, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts[2]

In 2010, Arthur Talbot (Arthur) had two adult children—Richard and Susan. At that time, Richard had a mild developmental disability and was receiving public assistance. Arthur and Richard were living together in Arthur's three-bedroom home in Hacienda Heights, California (the house).

Arthur executed a will that left all of his property to Richard.

To ensure that Richard's future receipt of his inheritance from Arthur did not render Richard ineligible for public assistance, the probate court on May 11, 2011 created a "Special

---

[1] Because several individuals involved in this case share the same last name, we use first names for clarity. We mean no disrespect.

[2] The facts herein are based on the uncontested facts set forth in various affidavits and other documentation in the record.

2

Needs Trust" with Richard as its beneficiary (the Trust). A special needs trust is a trust into which proceeds from an inheritance or from litigation are placed, so that minors or adults who would otherwise receive those proceeds and who also have "a disability that substantially impairs [their] ability to provide" for themselves can remain eligible for public benefits; such a trust is managed by an independent trustee. (Prob. Code, §§ 3604, subd. (b)(1), 3602-3605;[3] *Balian v. Balian* (2009) 179 Cal.App.4th 1505, 1512; *Gonzalez v. City National Bank* (2019) 36 Cal.App.5th 734, 743-746.)

In pertinent part, the Trust:

● Named the Public Guardian as the trustee;

● Granted the trustee "all of the powers [explicitly] enumerated in th[e Trust] and all powers . . . conferred on trustees under California law";

● Obligated the trustee to pay its own fees and the fees of its counsel "in a just and reasonable amount" "fixed and allowed" by the probate court; and

● Provided that, upon "Richard's death," and after payment of all debts of the Trust, the trustee must "distribute[] outright" "undisposed-of" property "to Richard's heirs at law, determined at the time of Richard's death."

Arthur died on July 4, 2012, leaving all of his property to Richard. Consistent with the terms of the Trust, title to the house that would have otherwise passed to Richard instead passed to the Trust.

In 2014, Susan moved into the house.

---

[3] All further statutory references are to the Probate Code unless otherwise indicated.

3

By April 2016, Richard's condition had worsened to the point where the probate court granted a conservatorship over Richard.

On December 19, 2018, Richard died without a will.

At the time pertinent to this litigation, the Trust had $66,056.32 in outstanding debts to the Public Guardian (for its fees as trustee), to County Counsel (for its services as the trustee's counsel), and related court fees. At the time pertinent to this litigation, the Trust's sole assets were $29,887.95 in cash and the house, eventually valued at $720,000 to $760,000.

Susan was the sole heir to Richard's estate.

## II. Procedural Background

On July 14, 2021, the Public Guardian filed a petition with the probate court for authorization to sell the house, pay off the Trust's outstanding debts, and disburse the remainder to Susan as Richard's sole heir.[4]

Susan opposed the petition, filing no fewer than seven different papers in opposition.

The probate court held four hearings, the last of which took place on October 12, 2022.

At that final hearing, the court granted the Public Guardian's petition. The court ruled that the Public Guardian had the authority, under California law and the terms of the Trust, to sell the house to satisfy the Trust's outstanding debts,

---

[4] The Public Guardian had filed a prior petition to sell the house in May 2017 when Richard was alive, but subsequently withdrew that petition after the parties reached a settlement resolving accusations of unnecessary expenditures for Richard's care by the Public Guardian.

4

and that the sale was appropriate because the outstanding debts exceed the amount of cash held by the Trust.

The court also rejected Susan's evolving objections to the sale.

Initially, Susan objected that it would be unfair to sell the house because she was living there and would become homeless; she accordingly proposed that a special needs trust be created *for her* so she could inherit the house without becoming ineligible for the public assistance *she* was receiving. The court rejected that request, finding that she had not shown that she suffered from a qualifying disability or met the age requirement for such a trust.

Next, Susan proposed that the Public Guardian transfer title to the house to *her* and place a lien on the house for the Trust's unpaid debts. The court rejected that option because the house would almost immediately go into foreclosure because Susan's undisputed monthly income of $471 was insufficient to pay the property taxes, property insurance, and utilities.

Then, Susan proposed allowing the Public Guardian to sell the property or to have *her* sell it, but only after the Public Guardian spent $79,475 to fix plumbing and mold issues with the house in order to fetch a higher sales price. The court rejected that option because using County funds to improve property where the ostensibly increased sales proceeds would go to Susan effectively amounted to an impermissible gift of public funds.

Lastly, Susan proposed that the Public Guardian pay her $400,000 outright, which she said was the diminution in the fair market value of the house due to the issues needing remediation. The court rejected that option as (1) procedurally inappropriate, because Susan had never filed a petition for a surcharge; and (2)

"premature," because whether there was a diminution in value would not be known until an offer had been lined up.

The court thus authorized the Public Guardian to sell the house subject to "court confirmation" once an offer was received, and invited Susan to file a petition for a surcharge, at which time the parties could litigate whether such a surcharge was legally appropriate and, if so, in what amount.

Susan filed this timely appeal.

## **DISCUSSION**

Susan challenges the probate court's order granting the Public Guardian authority to sell the house. We review probate court orders authorizing trustee actions for an abuse of discretion. (*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1258-1259.)

The probate court did not abuse its discretion in granting the Public Guardian's petition. It is undisputed that the Trust is a valid special needs trust. It is undisputed that the Public Guardian and County Counsel are entitled—both factually and legally—to recoup fees for their services as trustee and trustee's counsel, respectively. (§ 3605, subd. (b).) It is undisputed that the plain terms of the Trust grant the Public Guardian, as the trustee, "all powers . . . conferred on trustees under California law" and that section 16226 confers "the power to . . . dispose of property . . . at public or private sale" (§ 16226). It is also undisputed that the Trust's outstanding debt exceeds the Trust's cash on hand. On these uncontested facts, the probate court did not abuse its discretion in authorizing the Public Guardian, in wrapping up the Trust's affairs, to sell the house in order to pay off the Trust's outstanding debts, particularly when the court recognized that it would still have to confirm the propriety of any

6

sale and that Susan would have the opportunity to file a petition seeking to offset the sale proceeds with a surcharge for alleged mismanagement of the house by the Public Guardian.

Susan resists this conclusion with what we have grouped into four buckets of arguments.[5]

First, Susan argues that the Public Guardian has a duty to take her personal circumstances into consideration because *she* is an unnamed beneficiary of the Trust, and trustees have "a duty to administer [a] trust solely in the interest of the beneficiaries." (§ 16002, subd. (a).) Susan is wrong. She was never a beneficiary of the Trust; only Richard was. Her claim to the proceeds from the Trust is solely in the capacity of the intestate heir to Richard's estate. The only person who might owe Susan a duty vis-à-vis her role as an heir to Richard's intestate *estate* is the personal representative of that estate (§ 8460; *Estate of Wong* (2012) 207 Cal.App.4th 366, 375, fn. 3), but Susan has presented no evidence that the Public Guardian was ever named as the personal representative of Richard's estate. We reject Susan's attempt to conflate the Trust with Richard's intestate estate, and thereby make the Public Guardian the trustee *of both*. At oral

---

**5** Before the probate court, Susan seemed to advance a fifth bucket—namely, that Arthur had been unduly influenced into removing her from his will in favor of leaving everything to Richard back in 2011 or 2012. This type of collateral challenge on the probate of Arthur's will is untimely by orders of magnitude. A challenge to the probate of a will must ordinarily be brought within 120 *days* (§§ 8270, subd. (a), 8226, subd. (a)); Susan waited nearly 120 *months*. What is more, Susan has known about the probating of Arthur's will for years. Susan has not renewed this argument on appeal, so it is waived as well as meritless.

7

argument, Susan argued for the first time that she is a "residual beneficiary" of the Trust, but that term applies to a person who takes under a residuary clause of the instrument at issue—not to a person who may or may not eventually inherit trust property under intestate law. (Accord, *Estate of Mathie* (1944) 64 Cal.App.2d 767, 779.)

Second, Susan complains that the probate court took a "thoughtless, heavy-handed approach" to resolving the case because the court acted "absurd[ly]" by rushing to authorize the sale of the house without first figuring out whether the Public Guardian was neglectful in its maintenance of the house. The probate court authorized the sale only after explaining why the various proposals advanced by Susan were either not feasible, not practical, or not lawful, and after determining that it would be premature to hold an evidentiary hearing regarding the Public Guardian's potential liability for diminishing the value of the house before determining whether there *was* any diminution at all (a fact that would only be known after the house went on the market and offers came in for its purchase). These are not unreasonable determinations. At bottom, Susan asks us to reweigh the considerations and come to a different conclusion. But that is not our role under abuse of discretion review.

Third, Susan objects that the probate court committed several procedural missteps. As a threshold matter, Susan is correct that the probate court's minute orders repeatedly indicated that "[t]estimony [wa]s taken" at various hearings where no testimony was taken, but the court clerk's likely overuse of that macro does not by itself transgress Susan's procedural rights. Susan's more meaty contention is that the court impermissibly relied solely on affidavits and declarations

rather than taking live testimony. However, this is permissible as to uncontested facts. (§ 1022 ["An affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding under this code"]; *Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 377.) And, as described above, all of the facts upon which *the authorization to sell* is predicated were uncontested. To be sure, and as the probate court noted at the final hearing, the facts underlying the propriety of a possible *surcharge* are contested, but that issue is distinct from the issue of authorization and—critically—has been reserved for future litigation. Thus, Susan's citation to the probate court's acknowledgement that it was unsure whether facts relevant to the surcharge were "true or false" has nothing to do with the issue in this case.

Fourth and finally, Susan makes a few arguments that are beyond our power to address. She complains that "probate notes" should be part of the clerk's transcript on appeal, but the California Rules of Court provide otherwise. (Cal. Rules of Court, rule 8.122.) What is more, although we have the authority to take judicial notice of the probate notes as records of the probate court (Evid. Code, §§ 452, subd. (d), 459, subd. (a))—and Susan has requested that we do so here—we deny that request because those notes are irrelevant to the issue before us. Susan also complains that litigants should be allowed to record court hearings, particularly remote hearings conducted over videoconference, because limiting transcription of those proceedings to court reporters is unfair to indigent litigants who are not computer savvy. As the law stands now, recording of proceedings is against the law except in misdemeanor and infraction cases and "limited civil case[s]." (Gov. Code, § 69957,

9

subd. (a); *Jameson v. Desta* (2018) 5 Cal.5th 594, 608, fn. 10; *California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 29-30.)  Because we must obey the statutes our Legislature enacts, Susan's complaint is better directed toward the Legislature than the courts.

### DISPOSITION

The order is affirmed.  The Public Guardian is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ


10